## MURPHY v. DeFrance, *Appellant.*

DIVISION TWO.

1. **Homestead:** ACT OF 1865 : PARTIES. The widow and all the heirs are necessary parties to a proceeding for a homestead created by the act of March 23, 1865.

2. **Probate Court, Judgments of:** PRESUMPTIONS. Judgments and orders of probate courts in the exercise of probate jurisdiction are entitled to the same favorable presumptions and intendments that are accorded to orders and judgments of the circuit courts.

3. ———— : ———— : HOMESTEAD. When a probate court orders land of the decedent to be sold for the payment of his debts, it is *prima facie* subject to sale, and the burden of showing that it was exempt as a homestead is on the person so claiming it. ( *Overruling Daudt v. Ha' 'non,* 16 Mo. App. 203.)

4. ———— : ———— : ————. The grantee in the administrator's or sheriff's deed may show that the debt on which the allowance or judgment is founded existed prior to the homestead right.

5. **Statute of Limitation:** PLEADING. One desiring to avail himself of the statute of limitations must plead the particular statute on which he relies.

6. **Equity:** ORDER APPROVING ADMINISTRATOR'S SALE : APPEAL. A court of equity will not set aside an order of a probate court approving an administration sale, unless there was fraud in procuring it ; a wrongful approval is not sufficient, as it could have been appealed from.

Murphy v. DeFrance.

7. **Administrator's Sale of Land**: NON-FRAUDULENT AGREEMENT. Where two attorneys representing allowed claims against the estate of a decedent in excess of the value of certain land constituting the entire assets of the estate agree that, as between themselves, all the allowances shall be of equal rank, and that upon a sale of the land one of them shall buy it for the use of all the creditors *pro rata*, unless some other person shall bid enough to pay the debts, such contract is not fraudulent as preventing competition, and a purchase pursuant to its terms is valid.

8. **Probate Court Allowances**: NOT COLLATERALLY ASSAILABLE. Allowances by the probate court of demands against the estate of a decedent are judgments of record, and the validity of an order of sale of land for their satisfaction cannot be assailed by evidence *aliunde* to show that they had been paid or settled before the order was made.

9. **Administrator's Sale of Land**: ASSAILING SAME; LACHES. Although the sale of land of a decedent to pay debts may have been irregular, if the heir awaits until after the allowances have become barred by the statute of limitations, or are unavailable for purposes of a sale before he assails it, and then fails to show where and how he first learned of the irregularity, his claim is stale, and a court of equity will not sustain it,

10. **Injury, Relief for.** One cannot obtain relief in a court unless he shows he has been injured.

*Appeal from Knox Circuit Court.*—HON. B. E. TURNER, Judge.

REVERSED.

*Blair & Marchand* for appellant.

*O. D. Jones* for respondent.

(1) The petition states facts sufficient to constitute a cause of action for fraud. *Phelps Co. v. Bishop*, 68 Mo. 250; *Kerr v. Simmons*, 82 Mo. 269. (2) It states a case not barred by the statute of limitations. Plaintiff need not anticipate the defense of the statute. *Halsey v. Wood*, 55 Mo. 252; *Buren v. Buren*, 79 Mo. 538; *Dunn v. Miller*, 96 Mo. 324. (3) One relying on the statute of limitations as a defense must plead the particular one he relies on. *Vail v. Jacobs*, 7 Mo. App. 571.

(4)   An agreement among bidders just as here, that one shall bid off the land and then share the benefits of the sale, avoids it.   *Wooten v. Hinkle*, 20 Mo. 290; *Durfee v. Moran*, 57 Mo. 374.   See a contract less vicious than the one in this case held void in *Hook v. Turner*, 22 Mo. 333.   (5)   The contracts are positive evidence of actual fraud and of a clear purpose to violate the letter and spirit of the administration law of the state.   *Richard v. Ins. Co.*, 31 Mo. 518; *Kirk v. Merry*, 23 Mo. 72; *Kribben v. Haycraft*, 26 Mo. 371; *Claflin v. Torlina*, 56 Mo. 369 ; *Shumaker v. Reel*, 61 Mo. 582.  (6)  Although there is no statute of limitation, as to the time in which lands of decedent may be sold, still it must be done in a reasonable time after his death.   *Grumley v. Brown*, 86 Mo. 253.   (7)   On his own admission, the undisputed facts, DeFrance acted as attorney for "creditors" and the "estate," adverse in interest, at the same time, and used his place and power as such attorney to consummate the fraud.   *Davis v. Kline*, 96 Mo. 401; *Lee v. Smith*, 84 Mo. 304; *Bent v. Priest*, 86 Mo. 473; *DeSteiger v. Hollington*, 17 Mo. App. 382 ; *Atlee v. Fink*, 75 Mo. 100.   "Such agreements are immoral and corrupt, and will not be enforced.   The law leaves the parties where they placed themselves ; not for the sake of the defendant, but for the law's sake, and for that only."   *Alway v. Bank*, 93 Mo. 485.   (8) The homestead vests on the death of the husband without being set off.   *Rogers v. Marsh*, 73 Mo. 94.   If the land was sold to pay debts from which it was not exempt, the burden to show it is on defendants. *Kelsey v. Frazier*, 78 Mo. 111–114.   This fact can be shown only by the record of the probate court.   To permit any other evidence of the date of debt would lead to frauds.   *Daudt v. Harmon*, 16 Mo. App. 203.   The record offered by defendants does not show any date of any claim, only that of allowance.   There is no claim of any of them antedating the act of 1863, March 26, only the James Dodson claim.   The record only shows the date of the allowance.

The sale made in violation of the homestead right was void. *Kessenger v. Wilson*, 14 S. W. Rep.(Ark.) 96. (9) DeFrance will be held to have purchased as trustee for the heirs and creditors, even if it were all conceded to have been legal and in good faith. He does not show that he has paid a creditor a cent, who was entitled to have this land sold to pay his debt. Or to anyone only a trifle. He says in the answer the statute of limitations has run against all the allowances against the estate, and he will in equity be held to hold the title in trust for the heirs, and the decree divesting him of it is just, and will be affirmed. *Harper v. Mansfield*, 58 Mo. 17 ; *Clark v. Drake*, 63 Mo. 354. The presumptions are against an attorney who purchases his client's property. The burden is on him to show he gave a fair consideration and gave disinterested advice. *Cooper v. Lee*, 12 S. W. Rep. (Tex.) 483 ; *Cunningham v. Jones*, 37 Kan. 477. An attorney cannot in any case, without the client's consent, buy and hold, otherwise than in trust, any adverse title or interest touching the thing to which his title relates. *Baker v. Humphrey*, 101 U. S. 494. If he does, he holds the title in trust for the client. *Henry v. Raiman*, 25 Pa. 354 ; *Zeigler v. Hughes*, 55 Ill. 288 ; *Harper v. Perry*, 28 Ia. 57 ; *Wheeler v. Willard*, 44 Vt. 640.

GANTT, P. J.—This is a suit in equity by Stephen Murphy, in his own right as heir and as assignee of the other children of Benjamin Murphy, deceased, to set aside a sale of certain real estate, sold by Guy Chandler, administrator of Benjamin Murphy, to appellant DeFrance in October, 1874. The lands are sixteen acres off the north side of the northeast quarter of the southeast quarter of section 8, and the north half of the southeast quarter of section 6, township 62, range 15, in Adair county.

This action was commenced September 22, 1886, in Adair circuit court, and, on November 20, 1886, the venue

was changed to Knox county.   Judgment was rendered for respondents at the June term, 1888, against DeFrance and dismissed as to his codefendant, James Dodson.

The petition is as follows :

"Stephen A. D. Murphy,
                    Plaintiff,

          v.                              In the circuit court
"James M. DeFrance and          of Adair county, Mis-
      James Dodson,                 souri.
                    Defendants.

"Plaintiff states that he and Waddy Murphy, William Murphy and Nancy J. Dodson are sons and daughter and sole heirs at law of Benjamin Murphy, deceased, who died in Adair county, Missouri, in the year 1865, intestate, and seized in fee of the following real estate, to-wit:   Sixteen acres off the entire north side of the northeast quarter of the southeast quarter of section eight ( 8 ), and the north half of the southeast quarter of section six ( 6 ), all in township sixty-two ( 62 ), range fifteen ( 15 ), west, ninety-six acres more or less.   And on the —— day of ——, 1886, Waddy and William D. Murphy, aforesaid, and Nancy J. Dodson executed and delivered to plaintiff good sufficient deeds for their interest as heirs of said Benjamin Murphy, deceased, in and to all said lands ; that the estate of Benjamin Murphy, deceased, was duly administered upon and final settlement thereof made in the year 1875. About the year 1874 the defendants, claiming and pretending to be creditors of plaintiff's ancestor's estate, made a fraudulent, collusive and illegal agreement to the effect that they would procure an order of the probate court of Adair county to sell the real estate herein described after it had once been sold and deed by a former administrator of said estate under the cloud of that sale and deed.

"That by fraud and collusion and by promising the judge of the probate court that said lands, if so sold under that cloud, they should not sell for less than

$1,000, and by repeated applications, they finally induced the court to make an order of sale of all said real estate; that in pursuance thereof said real estate was appraised by three qualified appraisers in the year 1874 to be of the value of $1,600. At the October term, 1874, of the Adair circuit court, the defendants caused said lands to be advertised for sale in pursuance to their said fraudulent and collusive agreement aforesaid to procure it to be sold under the cloud of a former administrator's deed, and they agreed in said written agreement that they would not bid against each other; that one of them, defendant DeFrance, might bid off the lands, and then afterwards they would divide them *pro rata* between themselves. And to enable them to carry out their said fraudulent plan and scheme, and to prevent bidding at the sale, they published and reported at and before the sale that their claims far exceeded the value of the land and no bidder would get a title against them; and by the use of these and other means they were enabled to entirely suppress bidding at the sale. And defendant DeFrance did bid off all said lands at the grossly inadequate price of $100; that the then administrator of the estate refused to report the sale of land to the probate court unless defendants would make his commission on the sale reach the figures it would have been if they had bid $1,000 as they agreed; and defendants did give administrator $50 to induce him to report the sale to the probate court of Adair county, and ask that it be approved, and make to defendant DeFrance a deed; and it was all done in due time and the administrator's deed was delivered to DeFrance for the received consideration, $100. And shortly afterwards defendant DeFrance made a deed to defendant Dodson for an undivided forty-four-hundredths of all said lands, and both deeds are duly recorded, and they claim title to all said real estate thereunder against plaintiff, and are in the actual possession of a part thereof since about the year 1884.

Plaintiff says in truth and in fact defendants were no creditors of the estate of his ancestors, nor did they represent any such; that DeFrance is an active, practicing and licensed attorney, and in all his meddlings in the affairs of the estate, and in the written agreement with his codefendant, he claimed and pretended to be a trustee for creditors of the estate, when in fact he was no such trustee, and in law and equity could not be; that in fact he has not paid any creditors he pretended to represent anything.

"That, by their said fraudulent collusion of oppressive and illegal agreement aforesaid, they proposed to and have withdrawn all the assets of the estate from its proper and legitimate course of administration in the hands of the administrator to go to creditors or the heirs, and to have taken it in charge to administer between themselves in the forum of their own conscience, which is illegal, contrary to public statutes and policy, and in fraud of the whole administration law of the state, and the heirs of the estate. And plaintiff says that he and his grantors have only within the last year learned of the existence of said written agreement between defendants and the other fraudulent acts as herein stated, and he asks decree that the said administrator's deed made to defendant DeFrance and the deed made by him to his codefendant Dodson both be declared and decreed to be null and void, and for naught held; and that title to said real estate be quieted and vested in plaintiff as between plaintiff and defendant, and for general relief and costs of this suit.

"STEPHEN A. D. MURPHY.
"By Attorney O. D. JONES."

The defendant below, appellant here, pleaded the statute of limitations of ten years, and, further answering, denied all the fraud charged, and set up that, although the estate had been finally settled, there were large judgments and allowances that were liens on this land; that defendants, DeFrance and Dodson, owned

and controlled, as attorneys, all these allowances; that DeFrance, in his own right and as attorney for the various parties who had judgments and allowances, had purchased these lands and taken his deed; that his purchase was in good faith at public auction; that since his purchase he had conveyed to Dodson forty-four-hundredths of said lands,—that being the proportion Dodson's judgment bore to the sum of all the judgments; that five and one-half acres of the sixteen acres had been assigned as dower to Mrs. Murphy; that she was in possession of all the improvements; that he and Dodson were in possession of the remainder, and had paid all taxes in good faith; prayed that, in any event, the said judgment be declared a lien on said lands, and for general relief.

The reply pleaded the statute of limitations to all the allowances; charged that the court had no right to sell the lands after ten years; denies generally all the allegations of the answer.

On the trial, the record in the case of Nancy Murphy against the appellants was offered and read in evidence; and, as that case has been reported in 101 Mo. 151, it will not be necessary to repeat it here, further than to observe that, upon a petition of Guy Chandler, administrator of the estate of Benjamin Murphy, deceased, an order of sale was made by the probate court of Adair county for the sale of the ninety-six acres of land involved in this suit; and at the sale DeFrance became the purchaser, in October, 1874. In 1876, DeFrance began an action against Mrs. Nancy Murphy, widow of Benjamin Murphy, to have her dower in the ninety-six acres assigned; and that suit resulted in assigning her five and one-half acres, in the suburbs of Kirksville, with all the improvements. From that judgment no appeal was taken.

DeFrance then conveyed forty-four-hundredths of the land, subject to the dower, to James Dodson.

Mrs. Murphy, in 1885, commenced her action to set aside DeFrance's deed, and prayed for a decree vesting the title in her ; and she alleged all the matters relied on by plaintiff in this cause to show that the order of sale and the deed of DeFrance were procured by fraud. This court held that all the matters of which she complained had been finally determined in the dower suit, and there was no evidence that the dower judgment was procured by fraud.

From the evidence in this cause, it appears that plaintiff was twenty-eight years of age when he brought this suit.

Counsel have devoted a large portion of their brief to the point that plaintiff had a homestead right. If this land was the homestead of Benjamin Murphy, and exempt under the act of March 23, 1863, plaintiff is in no position to avail himself of it. His petition is not based on any such right ; and, as Benjamin Murphy died in 1865, leaving a widow and other children beside plaintiff, all of whom are still living, they would be necessary parties to any proceeding for the setting apart of that homestead exemption. Moreover, if this evidence is to be credited at all, a number of these claims against Benjamin Murphy were debts and liabilities contracted before the taking effect of that act ; and, as to such debts, the eleventh section of that act expressly provides that the exemption should not apply to such debts. We have been referred, in this connection, to the decision of the St. Louis court of appeals, *Daudt v. Harmon*, 16 Mo. App. 203, in which that court held, "that the record of the probate court is the *only proper evidence of* the fact that the debt for which the lands were ordered sold by the probate court was antecedent to the homestead ; and, unless the *record of the probate court* shows that the order of sale was made for an antecedent debt, the homestead is not affected by such sale."

We cannot concur in this view. On the contrary, the rule is well established in this state that the orders and judgments of the probate courts in the exercise of probate jurisdiction are entitled to the same favorable presumptions and intendments as are accorded to orders and judgments of circuit courts. *Price v. Real-Estate Ass'n*, 101 Mo. 107. And it follows that, when a probate court orders real estate sold for debts, the *prima facie* presumption is that it is subject to sale, and the burden of showing it was exempt is on the parties entitled to homestead ; and there is no good reason, either in the law of evidence or on grounds of public policy, why the grantee in the administrator's and sheriff's deed may not show that the debt on which the allowance or judgment is based is antecedent to the homestead right. This certainly is believed to be the almost universal opinion of the bar and trial courts of the state. The defendants have pleaded the statute of limitations of ten years in their answer, but in the argument they rely on the fifth subdivision of section 6775, which provides that "an action for relief, on the ground of fraud, shall be brought within five years, the cause of action in such case to be deemed not to have accrued until the discovery, by the aggrieved party, at any time within ten years, of the facts constituting the fraud."

A party desiring to avail himself of the statute of limitations must plead the particular statute upon which he relies. *Vail v. Jacobs*, 7 Mo. App. 571 ; *Hunter v. Hunter*, 50 Mo. 445. We come then to the case on its merits.

The petition proceeds on the charge of fraud in this : *First*, that defendants procured the order of sale by promising the judge of the probate court that said lands, if sold, should not sell for less than $1,000. The record shows that in the petition for the sale the administrator makes this averment. That said sale ( referring to the previous administrator's sale of this same land to Mrs. Murphy ) was, and is, an absolute

nullity for the reasons aforesaid among others ; that the creditors of said estate are desirous that this court should disregard the former void sale, and order said lands sold for the payment of the remaining debts ; that it will not cost any more to advertise and sell both pieces than one, and said creditors pledge themselves that a resale of said land shall realize to said estate as much as $500, but, if it should bring only $100, it would be that much for creditors, and they, in justice, should have a chance to bid for whatever interest said estate has in said lands, if any, "and this land is all the property belonging to said estate."

Mr. Greenwood, who was the attorney of Mrs. Nancy Murphy, the widow, testified that he and Judge Andrew Ellison resisted the order of sale, and that DeFrance made the argument for the order of sale, and in his speech said that if the court would make the order he, DeFrance, would make the ninety-six acres bring $1,000 at the sale, and credit it on the debts. He says that thereupon he ceased making objections to the sale. On cross-examination, he said that DeFrance said : "If the order of sale is made, I will make the land pay $1,000 on the debts of Benjamin Murphy." This witness further testified that, at that time, "there was no objection made to the *validity, honesty or bona fides* of any of the claims presented to the probate court up to that time, for which the administrator was asking to sell the land." The sale was made. There is absolutely no evidence of any misconduct at the sale by DeFrance. He, however, only bid $100 for the land, and it is now charged that defendants gave the administrator $50 to report the sale ; that he refused to report it until they agreed to give him that amount. In regard to this report of sale, it is in ordinary form, in the handwriting of the administrator himself. He states to the court that DeFrance had bid $100 for all the land, and had paid that sum, and he asks the court to approve

it. The court, *with this fact stated on the face of the report*, approved it.

Guy Chandler, the administrator, was sworn, and testified that he was mad, when DeFrance only bid $100, and told DeFrance he would not report the sale, but at the same time he knew he had to report it. DeFrance gave as a reason for not bidding more that it saved costs to the creditors. He was asked if he did not tell Mr. Greenwood that he would not ask the court to approve the sale, and answered : "No, sir; I did not, but what I did tell him was that I told DeFrance that I would not report the sale." Witness denied that DeFrance ever paid him a cent to report the sale and DeFrance also denies positively that he either agreed to or paid Chandler anything to report the sale. The evidence does not sustain the charge that DeFrance paid anything to the administrator to procure the report. And, as to the promise of DeFrance to bid $1,000, it appears this promise, if made, was *in open court*, to the probate court, and this same court approved this sale, for $100. Here was no concealment; on the contrary, the court to whom the promise was made is apprised by its own record, that only $100 was bid, and approved it.

That court had jurisdiction of the subject-matter and the parties. Its judgment was rendered with full knowledge of all the facts, and no appeal was taken from it. All the parties interested had notice of this proceeding ; able and distinguished counsel were employed and had contested the making of this order of sale. If satisfied that a wrong had been committed, an appeal could have been taken.

There is no evidence that DeFrance was present when the report of sale was made and approved. To authorize a court of equity to set aside the judgment of another court, it must appear that there was fraud in procuring the judgment; an illegal allowance or error is not sufficient. *Murphy v. DeFrance*, 101 Mo. 151 ;

*Jones v. Brinker,* 20 Mo. 87 ; *Picot v. Bates,* 47 Mo. 390 ; *Lewis v. Williams,* 54 Mo. 200.

Another ground for setting aside the sale and deed is that, "at the October term, 1874, of the Adair circuit court the defendants caused said lands to be advertised for sale in pursuance to their said fraudulent and collusive agreement aforesaid to procure it to be sold under the cloud of a former administrator's deed, and they agreed in said written agreement that they would not bid against each other; that one of them, defendant DeFrance might bid off the lands, and then afterwards they would divide them '*pro rata.*'"

The agreements referred to are three in number, and are as follows :

"*First Agreement.* Whereas, James M. DeFrance represents the following creditors of the estate of Benj. Murphy, to-wit: Bernd & Bro., John Dodson, Bigwill & Johnson, Kirksville Lodge 105, A. F. & A. M., E. S. Pierce, Wm. Lowe and Robert Mercer; and W. W. Cover represents James Dodson, a creditor of said estate; and whereas the above claims are all the claims that there existed at the death of said Murphy, and that have not been paid, and represent the entire creditors of said estate, so far as we know; and whereas the assets of said estate are not sufficient to pay off said creditors; and whereas further there are irregularities in the allowance of said claims by the court having probate jurisdiction,— some of said claims being improperly classed ; and as all expense and costs put on said estate will come out of the funds that said creditors would otherwise receive.

"Now, therefore, to avoid all expense possible, and, by way of compromise among said creditors, the following agreement is made, and the said parties, and the said DeFrance and Cover bind themselves to carry same into effect, to-wit:

"That all said claims shall be considered and hereafter treated as if allowed on the same day by the

VOL. 105—5

probate court and classed in the same class of demands, and to draw the same rate of interest.

" And it is further agreed that all said creditors shall prosecute said claims against said estate to a final determination, and, when any of said assets or real estate belonging to said estate at the time of the death of said Murphy shall be sold or offered for sale, either said DeFrance or Cover or both shall buy said property for the use of all said creditors, *pro rata*, according to what is due each of said creditors, unless some other arrangement shall hereafter be made, or unless some other person shall bid for such property a sum sufficient to pay off all the indebtedness of the said estate, to the persons above named; and, if said DeFrance and Cover or either of them shall bid in any such property for said creditors, the same shall be disposed of at the agreement of a majority in interest of said creditors, or by agreement between said DeFrance and Cover. The especial design of this agreement being to save costs, and to put all said creditors on an equality so far as priority is concerned, and to guard the interest of each alike. And the said DeFrance and Cover may give receipts to the administrator of said estate, so as to enable him to make final settlement without actually paying over to him the sum or sums bid for said property, and at any time any money shall be realized by this agreement the same shall be divided *pro rata* according to the respective interests of the parties here represented, and according to the respective amounts due from said estate *pro rata* as aforesaid.

"In witness whereof the said DeFrance and Cover have signed this agreement for all the parties each represents and for themselves, April 27, 1874.

"JAMES M. DEFRANCE,

" Attorney for balance of persons named.

"W. W. COVER,

"Attorney for James Dodson."

"*Second Agreement.* It is hereby agreed by and between James M. DeFrance and W. W. Cover, attorneys representing the various interests of the creditors of the estate of Benjamin Murphy, deceased, that the amount due said creditors as to each other and as contemplated by a contract made, signed and executed by said Cover and DeFrance as attorneys for the various creditors, dated April 27, 1874, is as follows, to-wit: Bernd & Bro., $215.35; John Dodson, $88.50; Bigwill & Johnson, $153.73; Kirksville Lodge, $200; E. L. Pierce, $20.20; Wm. Lowe, $5; Robert Mercer, $5.40; James Dodson, $539.20 and the money or property realized out of said estate on said claims shall be distributed *pro rata* according to the various amounts of each as stated above.

"This thirteenth day of May, A. D. 1874.

"W. W. COVER,

"Attorney for James Dodson.

"JAMES M. DEFRANCE,

"Attorney for persons named, except James Dodson."

"*Third Agreement.* It is hereby agreed by and between James Dodson and James M. DeFrance, representing certain creditors, and Harrington and Cover, James Dodson, that said DeFrance shall commence a suit or suits in the name of James M. DeFrance to determine the legal ownership of sixteen acres of land, purchased by said DeFrance, at the sale made by Guy Chandler, of the estate of Benjamin Murphy, deceased, which land was purchased with the joint money of the said DeFrance and Dodson as per a written contract signed by said DeFrance and W. W. Cover, attorneys for said Dodson. Said DeFrance and Dodson are to pay the expense attendant on suit in the proportions in said contract mentioned, except that each of the creditors are to pay their own attorney. November 19, 1875.

"JAMES M. DEFRANCE.

"JAMES DODSON."

Inasmuch as these agreements form the basis of plaintiff's petition, we must determine whether they are fraudulent. It is a self-evident proposition that the plaintiff assumes that the administrator's sale of Ringo to his mother is void ; otherwise he has no standing in court, either in law or equity. If *she* acquired the title, then the heirs had no estate that could be affected by the sale to DeFrance. On the other hand, if that sale, as plaintiff's suit necessarily implies, was void, certainly he would not expect much consideration from a chancellor, when he complains that the creditors were subjecting this land to their debts, and ignoring a confessedly void sale, from which no creditor received anything.

Let us see, then, what is the tenor of these agreements. Two attorneys, holding allowances amounting to a large sum and knowing that this land constitutes the only fund from which they can obtain even a partial satisfaction, make an agreement : *First*, that as between themselves all the allowances shall bear the same date and be of the same class. *Secondly*, that they will prosecute these claims against the estate, and , when any of the assets of the estate are sold, either DeFrance, or Cover, or both, shall buy the property *for the use of all the creditors*, "*pro rata*," according to what is due each of said creditors, "*unless some other arrangement is made, or unless some other person shall bid enough to pay the debts.*"

We are unable to see what principle of public policy forbids such an agreement. These parties have a common interest. They agree to purchase for *all* the creditors, unless some one else pays more. This is the first agreement, and the two others "are like unto it." There is no agreement to prevent any bid or competition, or to obtain the land for less than its value. The purpose is not fraudulent, and not prohibited by public policy. *Stillwell v. Glasscock*, 91 Mo. 658 ; *Larimore v. Tyler*, 88 Mo. 661.

The remaining allegations of the petition are that defendants were not creditors of the estate when they obtained the order of sale, and much proof was offered to show that various claims were paid or settled previous to that sale. Upon the clearest principles this practice cannot be tolerated. At the time this order of sale was made the allowances against the estate of Benjamin Murphy were of record ; they possessed all the attributes of judgments of the circuit court ; they are no more subject to be overturned in this way than the judgments and decrees of the courts of general jurisdiction. If they had been paid, or satisfied, the probate court of Adair county was the tribunal in which the proof should have been made. It was a matter of defense at that time to prevent the making of the order of the sale, but at that time, Mr. Greenwood, who was assisted by Judge Andrew Ellison, says no question was made as to the *validity*, honesty or *bona fides* of any of these allowances. There is no foundation in the petition for the admission of evidence to attack the validity of these allowances. When the probate court of Adair county passed on those allowances and made the order of sale, it became "*res adjudicata*," subject only to be set aside for fraud upon a petition with proper averments in a seasonable time.

And this brings us to the final controlling consideration in this case. Has plaintiff any standing in a court of equity, to question and overturn this sale, after the lapse of twelve years? While it is true that we have been compelled to hold defendant's plea of the statute of limitations insufficient, yet we think it is clear he is not debarred from urging the laches of plaintiff as an insuperable objection to his right to recover in this case.

In *Sullivan v. Railroad*, 94 U. S. 807, cited with approval by SHERWOOD, J., in *Kelly v. Hurt*, 74 Mo. 561, it is said : "To let in the defense that a claim is stale and that the bill cannot, therefore, be supported, it is not *necessary that a foundation shall be laid by any*

*averment in the answer of defendant.* If the case, as it appears at the hearing, is liable to the objection by reason of laches of the complainant, the court will, *upon that ground*, be passive and refuse relief.'' Applying that principle here, and what is plaintiff's position? Twenty years after his father's death he demands this land for the first time. He admits that these claims were once valid debts and judgments against his father's estate and this land. He waits until these claims are either barred by the statute, or unavailable for the purpose of a sale, as held by this court in *Gunby v. Brown*, 86 Mo. 253, and then asks a court of equity to give him the land discharged of all claims or liens.

It may be that DeFrance may have been guilty of some irregularities in procuring this sale, and if the matter had been investigated in a seasonable time, when an order of sale could have been renewed, and the creditors have had the benefit of this fund for the payment of their debts, that a court upon a proper petition might have set aside that sale ; but at this late day, after plaintiff has quietly folded his hands and waited for the debts to become barred by the statute, and now, when he comes into a court of equity, declines to go on the witness stand and inform us when, *where and how* he first learned of all these irregularities, we think it is a case where equity can safely follow the analogy of the statute of limitations, and hold that as the ten years has fully lapsed, and no evidence of diligence, and no proof when any fraud was first discovered, that it is better for the peace of society that such antiquated claims shall not be countenanced.

For these reasons we reverse the judgment of the circuit court of Knox county, and dismiss the bill at the cost of the appellee.

### ON REHEARING.

THOMAS, J.—In his motion for rehearing the plaintiff claims that this court ignored and overlooked the main issue in the case, and, in order that there may be

no misapprehension in regard to the grounds on which we predicated the result reached by us, we will restate them.    We understand that plaintiff bases his right to recover upon the fact that DeFrance acted as attorney for the administrator and creditors of the estate of Benjamin Murphy, in procuring the sale of the land in 1874, and his thus acting in a dual capacity, and representing antagonistic interests, operated as a fraud, both upon the estate and the creditors, and, in order to procure the sale, he promised the administrator and the court that he would make the land bring $1,000, and, having bought it for $100, he perpetrated a fraud, on account of which he ought to be held, as to the land, a trustee of the heirs of deceased.    Under the evidence introduced by plaintiff, we hold he has no standing in a court of equity.

He utterly failed to show that he was injured by the acts and conduct of DeFrance.    It is too well settled, to require citation of authorities to prove it, that no one can be heard to complain in a court of justice, unless he can show, and does show, that *he* has been injured.    In other words no one can obtain relief in the courts by showing some one else has been injured. Plaintiff says he was entitled to a homestead interest in the land at the time of the sale.    If so, that interest was not sold.  *Poland v. Vesper*, 67 Mo. 727.

Besides that, the plaintiff was over twenty-one years old when the suit was instituted, and his homestead interest, if he ever had any, became extinguished on his arrival at full age.    Again, the bulk of the debts for which the land was sold antedated the homestead law of 1863, and as to them no homestead in the widow and children of the debtor existed.  *Kelsay v. Frazier*, 78 Mo. 111.

And, in the last place, he does not aver in his petition that his claim to the land is based upon a homestead right, but upon a right derived by inheritance from the debtor.    Hence, he takes the property subject

to the payment of the debts, and in order for him to have any standing in court he must show that there were no debts.

The administrator alleged in his petition for the sale of the land that there were unpaid allowances against the estate amounting to $1,227.37 without interest. Plaintiff attempted to prove that two of these allowances, aggregating $739.20 were paid. But in this attempt we think he utterly failed. He proved some loose declarations that the Dodson allowance of $942 was settled. The administrator, in his petition, stated that this allowance was entitled to credits of $346.05, and $57, which left a balance of $539.20. Dodson was sworn in this case, and testified that this balance had not been paid. Plaintiff claims that this balance is fraudulent, because the allowance was for $230 only, and that it had been fully paid in May, 1872. The record shows that the probate court of Adair county in *June*, 1872, on the petition of Dodson, entered an order, *nunc pro tunc*, to the effect that the allowance was made April 3, 1866, for $942, instead of $230. This order recites that Harrington and Cover appeared for Dodson and "Guy Chandler, administrator *de bonis non* for the estate of Benjamin Murphy, deceased." It is now insisted that this order is void because the probate court had not sufficient evidence to authorize the court to make it. This order cannot be attacked in this collateral proceeding. *Montgomery Co. v. Auchley*, 103 Mo. 492.

Plaintiff claims that the Dodson allowance was settled *in May, 1872*, and yet we find in one month afterwards the administrator appears in court, and the court hears the evidence, and makes the order. That was the time and place to show that the claim had been paid. The transaction must have been then fresh in the mind of the administrator, and if the claim was not just, or had been settled, an appeal could have been taken.

As to the claim of $200 of the Masonic lodge, we will say that the evidence shows that the deceased had been a Mason, and the defendant and he were members of the same lodge.   In 1872, the question arose in the lodge whether the debt should be donated to the widow, and the conclusion was reached to donate it to her, but defendant suggested that there were enough other debts against the estate to sweep away all the property, and, if this debt was canceled, it would inure to the benefit of the other creditors and not to that of the widow, and, if the lodge desired to aid the latter, the proper way to do it was, to collect the debt, or as much of it as they could, and donate the money to her.   And the weight of the evidence is, that this course was concurred in and adopted by the lodge.    In 1874, Guy Chandler filed his petition for the sale of the land, stating that this lodge debt of $200, allowed June 4, 1867, and a balance of $539.20 of the Dodson debt, allowed April 3, 1866, had not been paid, and that all the unpaid allowances amounted to $1,227.37, not counting interest.

The widow of deceased employed P. F. Greenwood and Andrew Ellison, two attorneys, the latter now being circuit judge, to resist the application.   The plaintiff read in evidence the deposition of Greenwood, in which he testified that the ground on which they resisted the order of sale was, there had been a previous sale of the land by R. M. Ringo, a former administrator, to the widow, and that he and Judge Ellison both urged this ground in speeches to the court. DeFrance said to the court that "he would make the property bring $1,000 at the sale, and credit it on the debts of Benjamin Murphy, deceased."   Greenwood adds :   "Under that statement, I said to Mrs. Murphy that we would cease any further objections to the order of sale, and we did so.   *   *   *   There was no objection made to the validity, honesty or *bona fides* of any of the claims presented to the probate court up

to that time, for which the administrator was asking to sell the land."

The plaintiff called Guy Chandler, the administrator, as a witness, who testified, "DeFrance made a proposition to me prior to this, and the same proposition was made at the time the order of sale was made. The proposition was that he would make the land *bring $1,000 on the debts of the estate*." This is the plaintiff's own showing as to what occurred in the probate court when the order of sale was made, and the defendant in his testimony corroborated it. Hence, there does not seem to be any ground whatever upon which to base the assertion of plaintiff that the lodge and Dodson claims had been settled. The widow was in court when the order of sale was made, and that was the time and place to show that these claims were paid.

But plaintiff alleges and proves that DeFrance told the court that he would make the land bring $1,000, and that he bid only $100, and this, it is argued, operated as a fraud upon the heirs of deceased. Let us see. Greenwood and Chandler testified that DeFrance agreed to make the land bring $1,000 to be *credited on the debts of the estate*. Suppose he had bid $1,000, plaintiff and his brother and sister would not have received one cent of it. In the first place the agreement was that the whole $1,000 was to go on the debts of the estate, and in the second place, whether there was an agreement to that effect or not, it would have gone in payment of the debts ; for the debts at that time, principal and interest, amounted to twice one thousand dollars. Hence DeFrance's failure to bid $1,000 did not, and could not' operate to the injury of plaintiff, and for that reason he had no right to complain.

But plaintiff says DeFrance's conduct operated as a fraud upon the creditors. How could his conduct operate as a fraud upon them, when every creditor of the estate is provided for, and his interests protected by the agreements set out in the original opinion filed in this

case ?   If DeFrance had bid $1,000, and had got the land, all the creditors would have had would have been the land ; for the bid, as shown by plaintiff, was to be credited *on the debts of the estate*, and as it turned out the creditors got the land anyhow.   Plaintiff says DeFrance has not paid the creditors anything.   Even if this claim was well founded, plaintiff would have no right to complain.   The creditors have not asked him to interpose in their behalf for the protection of their interests. DeFrance cannot, however, escape accounting to the creditors for this land.   He has signed contracts in which he bound himself to hold the lands for the creditors and besides that he alleges in his answer, and swears to it on the trial, that he holds the land for the creditors.

The lodge can compel him to pay it its share of the value of the land as per the agreements he signed, and then the lodge can, when it collects the money, donate it to the widow if it see proper.   Our conclusions are :   *First*, that the debts of the estate with the interest thereon amounted in 1874 to more than the land was worth, and, *second*, that DeFrance's conduct did not operate to the injury of plaintiff or the creditors.   We will add that we have reached these conclusions upon the issues presented by plaintiff's *amended* petition.

Complaint is made that, in the opinion filed in the case, it is stated that plaintiff was at the time of the trial twenty-eight years old, whereas he was several years younger than that, and, as some stress was laid on his laches, this mistake must have operated to his prejudice in the minds of the judges of this court.   Plaintiff may not have been as old as stated, but he claims partly under a brother who swore he was twenty-nine years old at the time of the trial, and the laches of the parties, under whom plaintiff claims, must be imputed to him. But we wish to say with emphasis, that the result we reached in the case was based on the laches of plaintiff only incidentally.   The main grounds of the decision are as stated above.   All of this division concur.