WILLIAMS *et al.*, *Plaintiffs in Error*, v. MITCHELL.

Division One, November 28, 1892.

1. **Evidence:** PROBATE COURT RECORD. The record entry of a probate court is admissible in evidence to show an order by such court for the specific performance by an executor of a contract made by the testator for the conveyance of land, and it is immaterial that such record entry contains no captions naming the parties, and does not recite either the filing of the petition or notice to the executors.

2. **Note:** PRESUMPTION OF PAYMENT. Where a note was given for the purchase of land to one, since deceased, more than twenty years before suit, and it was not found among the effects of the deceased, and no attempt has been made to collect it, it will be presumed that it has been paid.

3. ———: ———. The payment of a debt at common law, even though in the form of a specialty, will be presumed after the lapse of twenty years, in the absence of evidence to the contrary, and this presumption is unaffected by the statute of limitations.

4. **Deed, Presumption of Execution of.** Where one took possession of land under a title-bond, and the maker of the bond having died, the probate court directed his executors to make a deed to the person taking possession of the land or to his order, and such person and those claiming under him remained in actual and continuous possession for more than twenty years without any claim by the maker of the bond or his successors, it will be presumed that a deed was executed in compliance with the order of the probate court.

5. **Title Bond:** ADVERSE POSSESSION. Such possession of the premises will be deemed adverse to the whole world.

6. **Supreme Court Practice:** HARMLESS ERROR. Where the judgment of the trial court is manifestly for the right party, it will be affirmed, notwithstanding errors which do not materially affect the merits of the case.

*Appeal from Greene Circuit Court.*—HON. W. D. HUBBARD, Judge.

AFFIRMED.

EJECTMENT for land in the city of Springfield; action brought February, 1889. James T. Williams is the common source of title, and plaintiffs are either his devisees, or else in one respect he represents them in this action.

At the outset of the trial certain matters were settled by an agreed statement of facts as follows:

"*Third.* That James T. Williams died in December, 1846, testate, leaving the following children: Mary, Ellen, Tully and Virginia and his widow, Louisa Williams.

"*Fourth.* That said Louisa Williams, widow, married John T. Staples on August 23, 1849, and that she died in March, 1887; that Staples, the husband aforesaid, died December 28, 1886.

"*Fifth.* That Mary Williams, aforesaid, married November 23, 1856, to one William B. Crayne, and she died in 1881, leaving one child, Mary, who married

Samuel W. Church, and her interest in the land has been conveyed to Mrs. Ellen Clusky in 1888.

"*Sixth*. That Ellen Clusky, formerly Ellen Williams, aforesaid, intermarried with Henry Clusky in 1860, and is now alive, as is her husband.

"*Seventh*. That Virginia Williams, aforesaid, died in infancy in 1847 or 1848, and without issue.

"*Eighth*. That Tully Williams is still alive, aged about fifty years.

"*Ninth*. That William B. Crayne, aforesaid, died before the beginning of this suit."

Other facts admitted will be stated further on.

In 1846 William sold ten acres of land which embraces that which is in controversy to Joseph Burden, and executed to him a title bond dated April 23 of that year, formal in all its parts and reciting that Burden had executed his promissory note of that date for the sum of $75, as the purchase price of the land, said note being due October 23, 1847. Williams died in December, 1846, and the executors appointed by his will qualified and entered upon their duties as such in January, 1847. On purchasing the land described in the title bond, Burden entered into the possession of it, and he and those claiming under him have been in "actual and continuous" possession as the owners thereof ever since, except a space of three years from 1862 to 1865, when owing to the disturbed condition of the country by reason of the civil war the land remained unoccupied.

The answer of defendant was a general denial and an admission of possession, and then for a further defense pleaded to the effect that Williams had sold the land in question to Burden for $75, for which Burden executed his promissory note to Williams, who then delivered to Burden his title bond in usual form, who thereupon entered into possession of the premises, and afterwards

sold the land to Kimbrough for $100, which the latter paid him, and entered into possession of the land; that afterwards the county court ordered that the executors of Williams execute and deliver to Burden or order a conveyance to the land in controversy, on payment of the purchase money, which said money said Burden paid.

The answer further sets forth that Kimbrough conveyed the land to Berry, and that the title to the land has since that period come down to defendant by a regular chain of conveyances. The answer then asks for divestiture of the title and for general relief.

The replication of the plaintiffs was a general denial.

On the trial before the circuit judge, without the intervention of a jury, it was admitted that the title bond had been executed by Williams to Burden; that Burden entered into possession of the land at the time, and the actual and continuous possession of the land by him and those claiming under him all as aforesaid.

In support of the plea of payment of the purchase money, it was shown by the probate records that the will of James T. Williams was exhibited in court, and the proof of the same which had been taken in vacation was adjudged sufficient, and the same ordered to be recorded, the executors appointed by the will entered upon the discharge of their duties, and that their bond as such was approved on January 8, 1847, and their inventory filed and approved.

The defendant then offered and read in evidence over plaintiffs' objection from the same record of date, July 7, 1847, the following entries:

"This day was exhibited a bond executed by one James T. Williams in his lifetime binding himself to make a title to the following described tract of land, to-wit, giving description as in the title bond.

The premises being fully understood, it is considered by the court that the interest of the estate requires a specific performance on the part of the deceased by said contract.

It is, therefore, ordered by the court that the executors of said estate, upon the payment of the purchase money, make and execute to said Joseph Burden, or order, a good and lawful deed of conveyance for the said ten acres of land above described.''

The objections were that the record did not show specific performance, and that it is manifest on the face of the order that the probate court had no jurisdiction over the subject-matter or the parties.

The defendant then offered in evidence the probate record of the same date as last aforesaid as follows:

"Joseph Burden
        v.                    Account filed $24.43 3-4.
"Estate of J. T. Williams

''This day comes the plaintiff in this cause, the administration of said estate being also present, the necessity of a notice being waived, the proof heard and the premises fully understood, the court do find that the said estate owes the said plaintiff the sum of $24.43 3-4. It is, therefore, considered that said plaintiff recover of said estate the aforesaid sum of $24.43 3-4 together with his costs in this behalf expended, placed on the fifth class.''

Objection was made to this record that the same was immaterial and irrelevant. It was then admitted that the first inventory of the estate of Williams showed a note against Joseph Burden for $75, dated April 23, 1846.

The probate record also showed that a settlement was made September 4, 1848, by John B. Cecil, one of the executors of the will of Williams. Those records also showed that one Maurice had been appointed administrator *de bonis non*, and that on the eighth day

of March, 1850, he showed to the court that *nothing had come into his hands as such*, and thereupon he was permitted to resign, his letters were revoked and Wm. C. Price was appointed administrator *de bonis non* in his stead in the same year, who thereupon gave bond as such.

The probate court records also showed that on the fourth day of June, 1850, a judgment of allowance was entered against the estate of Williams, and in favor of N. R. Smith for $753.53, and the testimony shows this judgment was never paid. The testimony also showed that the title bond in question was afterwards found among the files of the probate court and seen there but a short time before the trial of this cause, but a careful search failed to discover among those files Burden's note for $75. There was also testimony showing that John S. Kimbrough bought the land of Burden in 1846, for a value of $100, paid the same and cultivated the land entered upon for some five years, when he sold it to D. D. Berry, and conveyed it to him by a deed dated August 13, 1851.

It was admitted that there was a regular chain of title based upon a valuable consideration from Kimbrough down to the defendant. Kimbrough could not tell whether he had ever received a deed to the land from Burden, nor does it appear that the latter ever assigned the title-bond to the former.

Upon this evidence, after giving and refusing several declarations of law, the court found in favor of the defendant, and entered a judgment in his behalf in ordinary form.

*Wm. R. Hudson* and *Wm. O. Mead* for plaintiffs in error.

(1) The court erred in admitting in evidence the probate record of allowance in favor of Burden against

the estate of Williams for $24.43, as it was not admissible for any purpose—not even a circumstance going to show payment of the purchase money for the land. *Dunnea v. Thomas*, 15 Mo. 385. (2) The court erred in admitting in evidence the probate record of an allowance against the estate of Williams in favor of Smith for $765. (3) The court erred in admitting in evidence the settlement of John B. Cecil, executor of the estate of James T. Williams, deceased. (4) The court erred in admitting in evidence the letters of administration granted to William C. Price. (5) The court erred in admitting in evidence what purported to be an order of the county court for the specific performance of the contract of sale from Williams to Burden, for the reason that it is manifest the court had no jurisdiction, neither Burden nor the executors appearing to have been before the court, and the purchase money appearing then not to have been paid. Revised Statutes, 1845, secs. 36–40, p. 88. (6) The court erred in refusing the declaration of law asked by plaintiffs, number 3, for the reason that the grantees of Burden could occupy no better position in relation to the title than Burden. (7) The court erred in refusing the declaration of law asked by plaintiffs, number 4; the note appended to this declaration by the trial court is conclusive of its correctness. *Brown v. Brown*, 33 N. J. Eq. 658; Revised Statutes, 1889, sec. 5186; Revised Statutes, 1845, sec. 1, p. 529. (8) The court erred in refusing the declaration of law asked by the plaintiffs, number 5; while the court below refused this declaration it also refused a counter declaration asked by defendant. Tyler on Ejectment, pp. 565, 876–880; Sedgwick & Wait on the Trial of Title to Land, secs. 165, 751; Tiedeman on Real Property, sec. 700; *Gould v. Thompson*, 2 Leading Cases in American Law of Real Property, 247, and note; *Foley v. Wyeth*, 2 Allen, 131; *Gebbs v. Sullens*,

48 Mo. 237; *Fulkerson v. Brownlee,* 69 Mo. 371; *Budd v. Collins,* 69 Mo. 129; *Estes v. Lang,* 71 Mo. 609; *Cole v. Roe,* 39 Mo. 411. (9) The court erred in giving declarations of law asked by the defendant, numbers 2 and 3. (10) The defendant was not entitled to pay his proportion of the purchase money and have a decree of title as prayed in his answer; the administrator is not a party to this action, and he is the only person authorized to receive the money. *Rose v. Perkins,* 98 Mo. 253. (11) The court erred in its finding and judgment for the defendant. (12) The court erred in overruling plaintiffs' motion for a new trial.

*B. U. Massey* and *Goode & Cravens* for defendant in error.

(1) It will be presumed after a lapse of twenty years that the purchase money of the land has been paid. This common-law presumption of payment after twenty years is outside the statute of limitations, is not affected by it and is still in force. *Clemens v. Wilkinson,* 10 Mo. 97; *Smith v. Benton,* 15 Mo. 371; *Carr v. Dings,* 54 Mo. 95. "The vendor's lien under a title bond will be presumed to have been satisfied after the lapse of twenty years, and continued possession of the vendee." This doctrine is expressly held in the following cases: 2 Jones on Liens, sec. 1108; *Lewis v. Hawkins,* 23 Wall. 119; *Harris v. King,* 16 Ark. 122. If the court follows these authorities, they are conclusive against the right of the plaintiffs to recover in this action. (2) So, in view of the circumstances in evidence, it will be presumed that a conveyance was made by the administrator of the estate of James T. Williams to either Joseph Burden or his assignee, Jno. S. Kimbrough. *Long v. Mining Co.,* 68 Mo. 422. If such conveyance

was not made it should have been, and the rule that equity regards as done what ought to have been done is fully applicable to this case. *Snyder v. Murdock*, 51 Mo. 175; Pomeroy's Equity Jurisprudence, sec. 368. In such instances courts of equity treat the vendee as the real owner of the land, and under our system of practice such equitable defense is good in an action of ejectment. *Farber v. Purdy*, 69 Mo. 601; *Miller v. Corey*, 15 Iowa, 166; *Spangler v. York Co.*, 13 Pa. St. 322. Equitable defenses are available in ejectment. *Hayden v. Stewart*, 28 Mo. 286. "The fact that defendant holds under a contract of purchase made with plaintiffs' deceased father is a good defense." *Harris v. Vinyard*, 42 Mo. 468. The last case is just like the one at bar, and fully indicates the correct solution of it. (4) The only relief to which plaintiffs would be entitled, if there is no presumption that the purchase money was paid, or if the evidence did not prove that it was, or if it affirmatively appeared from the evidence that it was not, would be the enforcement of the vendor's lien for such unpaid purchase money. *Harris v. Vinyard*, 42 Mo. *supra; Jasper Co. v. Tevis*, 76 Mo. 13.

SHERWOOD, P. J.—I. It was clearly competent to offer in evidence the probate record showing the order for specific performance of the contract set forth in the title bond, and it was wholly immaterial that such record contained no caption naming the parties, and reciting neither the filing of a petition or notice to the executors, etc. And this is so because it is the established doctrine of this court that, in regard to courts exercising probate functions, they are to be treated, so far as concerns probate matters, in all respects as courts of general jurisdiction; and the same liberal intendments and presumptions attend their acts and doings, within the sphere of their organized authority,

as attend the acts and doings of courts of general juris-
diction. *Brook v. Duckworth,* 59 Mo. 48; *Johnson v.
Beazley,* 65 Mo. 250; *Price v. Real-Estate Ass'n,* 101
Mo. 107; *Murphy v. DeFrance,* 105 Mo. 53.

In accordance with the authorities cited it will,
therefore, be presumed that all prerequisite steps were
taken and all parties present before the probate court
necessary to give full validity to its proceedings in
that behalf.

II. And this record evidence constituted an impor-
tant basis on which to build, or assist in building, a pre-
sumption that a deed was executed in compliance with
the judgment of the probate court, because the only
condition required by that judgment was that payment
be made as specified in the title bond.

It will have been observed, that the judgment of
the probate court was so worded that it allowed the
deed to be made to Joseph Burden *or order,* and that
the note of Burden by its terms was not due until the
twenty-third day of October, 1847, several months
after the date of the order for specific performance.
Now it appears from the testimony of Kimbrough, as
already stated, that he had bought the land of Burden
and paid for it the year previous to the action of the
probate court in relation to the specific performance
of the contract. In view of this testimony it is but
reasonable to suppose that the judgment for specific
performance was framed so as to conform to the con-
tractual relations aforesaid, existing between Burden
and Kimbrough, and between the former and Williams.
Taking this premise as true, and there seems to exist
no reason to doubt it, it is next in order to consider, *first,*
whether payment of the note was made to the execu-
tors, and, *second,* whether they complied with the
judgment of the probate court.

In determining these points, it becomes necessary to advert to familiar principles relative to certain disputable presumptions of law, to-wit:    One of the most hackneyed of those presumptions is that in relation to the usual course of human affairs, and that those engaged in transacting business will transact it in the ordinary way.    1 Greenleaf on Evidence [14 Ed.] sec. 38.

Thus, as it is the usual course of business that a promissory note when paid, or other debenture or writing, obligatory when satisfied or discharged, is taken up by the maker or obligor, the fact that such an instrument is afterwards found in the possession of the payor or obligor, a legal presumption is at once raised that the maker or obligor has paid, discharged or satisfied the claim evidenced by the instrument thus taken up, because this is in the ordinary course of business. 1 Greenleaf on Evidence, sec. 38, *supra;* 2 Wharton on Evidence [3 Ed.] sec. 1362; *Fitzgerald v. Barker*, 85 Mo. *loc. cit.* 22.

In the case at bar, as will be remembered, the promissory note of Burden, though inventoried in January, 1847, by the executors who first took charge of the estate, was not found by those who subsequently had the estate in charge, nor could it be found amongst the papers of the estate a short time before the trial, while the title bond was found among such papers at the time they were searched for the note.    These facts alone tend very strongly to show a payment of the note in question.

III.    Besides, it does not appear that any suit was ever instituted on the note during the long space of time that the estate was in course of administration, although that estate was confessedly insolvent; indeed, one of the administrators on being discharged as shown

by the records reported to the court that nothing had come to his hands in his fiducial capacity.

The fact that no action is brought on a claim, and no assertion made of it as a demand, is evidence unfavorable to its existence; and this is especially true of a claim or obligation which long since has matured and become dormant.   2 Wharton on Evidence [3 Ed.] sec. 1320a; Angell on Limitations [6 Ed.] sec. 11; 1 Greenleaf on Evidence, sec. 197; *Bank v. Aull*, 80 Mo. *loc. cit.* 201; 2 Best on Evidence [Morgan's Notes] sec. 320.

IV.   But payment of the note may well be presumed on other grounds.   It is a common-law presumption that payment of a debt, even one due by specialty, where it has been unclaimed and without recognition for twenty years, is, in the absence of evidence to the contrary, presumed to have been paid; and the jury may infer the fact of payment from the circumstances of the case in a shorter period.   1 Greenleaf on Evidence [14 Ed.] sec. 39.   The same holds good of a simple contract debt.   Angell on Limitations [6 Ed.] sec. 78.

V.   And this common-law presumption is independent of, and unaffected by, the statute of limitations.   *Carr v. Dings*, 54 Mo. 95, and cases cited.

VI.   Again, a vendor's lien under a title bond will be presumed to have been satisfied after the lapse of twenty years, where there has been continued possession by the vendee.   2 Jones on Liens, sec. 1108; 2 Wharton on Evidence, sec. 1360, and cases cited; *Lewis v. Hawkins*, 23 Wall. 119; *Harris v. King*, 16 Ark. 122.

VII.   The agreed statement already referred to shows that the possession of the land in controversy, with the exception aforesaid, was *"actual and continuous"* from the time of its purchase by Burden down to the time of suit brought in 1889; and the agreed statement and

testimony show that such "actual and continuous" possession of the premises has been maintained ever since by those who have successively bought and sold it as their own, and that no one representing the heirs or devisees of Williams has, until the present action, laid claim to the land. In such circumstances the possession of the premises may well be deemed adverse to the whole world. *Garrett v. Jackson*, 8 Harris, 335.

Owing to the facts already recited, it need not be discussed what the situation would have been had proceedings been instituted within twenty years to enforce any supposed vendor's lien against the first purchaser. As already seen, the only link lacking in a perfect chain of legal title to the land in litigation is a conveyance from the estate of Williams to Kimbrough, something evidently contemplated in the order for specific performance made after Kimbrough had bought the land from Burden.

Considering all circumstances aforesaid, it may well be presumed that the executors of Williams executed a deed to Kimbrough in conformity to the order of the probate court. Touching presumptions of this nature Greenleaf observes: "Juries are also often instructed or advised, in more or less forcible terms, to presume *conveyances between private individuals* in favor of the party who has proved a right to the beneficial enjoyment of the property, and whose possession is consistent with the existence of such conveyance, as is to be presumed; especially if the possession, without such conveyance, would have been unlawful, or cannot be satisfactorily explained. This is done in order to prevent an apparently just title from being defeated by matter of mere form. * * * It is sufficient that the party, who asks for the aid of this presumption, has proved a title to the beneficial ownership, and a long possession not inconsistent therewith; and has made it not

unreasonable to believe that the deed of conveyance, or other act essential to the title, was duly executed." 1 Greenleaf on Evidence [14 Ed.] sec. 46, and cases cited.

And in concluding this paragraph of the opinion it is not improper to remark that this court in several instances has spoken of the disfavor with which we view attempts to overthrow business and judicial trans-actions which have occurred at remote periods (*McClanahan v. West*, 100 Mo. *loc. cit.* 324; *Burdett v. May*, 100 Mo. *loc. cit.* 18, and cases cited), and of the liberal presumptions that we would indulge in order to prevent irregularities or imperfections in such transac-tions from being held fatal. *Long v. Mining & Smelt-ing Co.*, 68 Mo. *loc. cit.* 432, *et seq.; Price v. Real-Estate Ass'n, supra.*

Here, one of the female plaintiffs, who never married, was about fifty years of age at the time of the trial; the matters which gave origin to this litigation occurred nearly a half century ago, and of the original contracting parties but one, it seems, remains alive, Jno. S. Kimbrough, and the remaining administrator, Judge W. C. Price, was at the time of the trial seventy-seven years of age; the others either died from old age or else removed from the state. In such circum-stances as these, if ever there was a case which would give occasion to invoke the healing and wholesome presumptions of the common law in order to supply links and thus support titles and validate seeming irregularities, it is this one. Such presumptions are freely indulged by the courts, *e. g.:* Thus, SERGEANT, J., on an occasion similar to the present one, said: "The rule of presumption, when traced to its foundation, is a rule of convenience and policy, the result of a necessary regard to the peace and security of society. * * * Justice cannot be satisfactorily done when

parties and witnesses are dead, vouchers lost or thrown away, and a new generation has appeared on the stage of life, unacquainted with the affairs of a past age, and often regardless of them. Papers which our predecessors have carefully preserved are often thrown aside, or scattered as useless by their successors." *Foulk v. Brown*, 2 Watts, 215.

In another case, where there had been a parol bargain and sale of land and possession for forty years, the lower court required the same strictness of proof that is requisite in a recent case, and in speaking of this ruling and of the necessity of relaxing the rules of evidence in matters of ancient date, AGNEW, J., said: "If the rule which requires the proof to bring the parties face to face, and to hear them make the bargain, or repeat it, and to state all its terms with precision and satisfaction, is not to be relaxed after the lapse of forty years, when shall it be?    *    *    *    There is a time when the rules of evidence must be relaxed. We cannot summon witnesses from the grave, rake memory from its ashes, or give freshness and vigor to the dull and torpid brain." *Richards v. Elwell*, 12 Wright, 364–367. See also 2 Wharton on Evidence, secs. 1338–1352.

VIII.   Usually it is left to the jury to say whether in certain circumstances a promissory note has been paid, or a deed which constitutes a link in and completes the chain of title has been delivered. In this case it is quite evident, from the refusal of the defendant's fifth instruction of law, that the lower court did not consider the note had been paid, and in consequence of this, of course, could indulge no presumption that a deed had been delivered by the executors to Kimbrough.

But, notwithstanding this, we are of opinion that the evidence on these points is so clear and cogent as to

warrant the indulgence of the presumption by this court of the payment of the note and the delivery of the deed.

IX. There may have crept into the record some errors in the admission of evidence and in the giving and refusing of declarations of law; but, as the judgment is so manifestly for the right party, the judgment should be affirmed, notwithstanding harmless errors which do not materially affect the merits of the action. *Fitzgerald v. Barker, loc. cit.* 96 Mo. 666; *Brobst v. Brock,* 10 Wall. 519. All concur.