MACEY, et al., *Plaintiffs in Error*, v. STARK.

Division One, June 6, 1893.

1. **Ejectment:** PROBATE PROCEEDINGS: GENERAL DENIAL. A defendant in ejectment may, under a general denial, offer in evidence proceedings of the probate court showing title in himself.

2. ——: ——: HARMLESS ERROR. Where the transcript of such proceedings of the probate court offered in evidence by a plaintiff in ejectment were excluded at the trial, but are preserved in the bill of exceptions, the supreme court will consider them on appeal and will not at plaintiff's instance reverse the judgment for error in their exclusion, where they show title out of him.

3. **Probate Courts, Orders and Judgments of:** PRESUMPTION. Orders and judgments of probate courts as to matters over which such courts have jurisdiction will be presumed to have been regularly made and entered, until the contrary is shown.

4. ——: RESIGNATION OF ADMINISTRATOR: PRESUMPTION: Where the records of a probate court show a full settlement of an administrator made "upon his resignation," the presumption is that he gave the eight weeks' notice of his intention to resign required by Revised Statutes, 1845, sec. 40, p. 69, and that the court had the power to order the estate into the hands of the public administrator.

5. **Presumption.** Acts done which presuppose the existence of other acts to make them legally operative are presumptive proof of the latter.

6. **Administrator:** VACATION APPOINTMENT: COLLATERAL ATTACK: The appointment of an administrator *de bonis non* during the vacation of the probate court is not subject to collateral attack, on the ground that the court did not, at its next term, enter of record the confirmation of the appointment as required by the statute. (Revised Statutes, 1845, p. 62, sec, 2) when the court did, at its next term, approve the administrator's bond given in vacation and he subsequently manages the estate for many years under numerous orders of the court.

7. ——: ——: ——. Where letters of administration are issued in vacation, they are valid until rejected by the court.

8. ——: OBJECTION TO LETTERS: COLLATERAL ATTACK. Objections to letters of administration because steps preliminary to their issuance were not taken in the probate court should be made in that court and not in a collateral suit.

9. Public administrator: PRIVATE ADMINISTRATOR: STATUTE. Revised Statutes, 1845 (p. 109, sec. 10), did not prohibit a public administrator in charge of an estate from being appointed administrator in his individual capacity and where he was so appointed and duly qualified he held the estate as a private and not as a public administrator.

10. Administration: DECEDENT'S LANDS, SALE OF TO PAY DEBTS. The sale of decedent's lands for the payment of his debts is not void because the order to show cause· and the notice published pursuant thereto are entitled "In the matter of the estate of W. M. Macey, deceased," instead of "William M. Macey," where the record shows that the estate was described in the probate proceedings in various ways, that it was as well known by one of the foregoing designations as the other and that no interested party was misled.

11. ——: ——: COLLATERAL ATTACK. A delay of eleven years after the decedent's death before applying for an order to sell his estate to pay his debts does not render the sale void and subject to collateral attack, where it appears that there were several changes of administration and the delay was in a greàt measure due to a pending suit to cancel a deed as a cloud on decedent's title.

12. ——: ——: ——. The judgment of the probate court on the question of the necessity of an order of sale of the decedent's lands for the payment of his debts is conclusive in a collateral proceeding.

13. ——: ——: CLERICAL ERROR. A mere clerical error as to the date of the renewed order of sale of a decedent's land made by the administrator in his report of the sale will not vitiate it.

14. ——: ——: ——. The administrator's sale in this case was properly made while the "Probate and Common Pleas Court of Jackson county was in session" for the transaction of probate business, under the statute requiring such sale to be made during the session of the circuit, probate or county court.

15. ——: ——: ——: ESTOPPEL. Where a public administrator has been appointed administrator de bonis non in his individual capacity, his designation in subsequent proceedings in the probate court as public administrator will not estop purchasers at sales made by him as private administrator from denying that he acted as public administrator.

Macey v. Stark.

16. **Administrator**: VACANCY: PRESUMPTION. The appointment by the probate court of an administrator *de bonis non* is of itself *prima facie* evidence of a vacancy in the office of administrator, and the presumption of such vacancy will prevail in a collateral proceeding until it is clearly and explicitly rebutted.

17. ———: RESIGNATION: COLLATERAL ATTACK. An express order of court accepting the resignation of an administrator is not necessary to the completion of such resignation where it comes in question in a collateral proceeding.

18. **Deed**: ACKNOWLEDGMENT: OFFICER DE FACTO. An acknowledgment of a deed before an officer *de facto* is valid.

19. ———: ———. An acknowledgment of an administrator's deed before the clerk of a probate court appearing from its records to have resigned held valid, in the absence of any evidence showing when the resignation took effect.

20. **Administrator's deed**: SEAL: PRESUMPTION. A recital in a certified copy of an administrator's deed from the recorder's office that the deed was executed under the hand and seal of the administrator creates the presumption that the original deed was under seal, though the certified copies show no scroll or seal.

*Appeal from Johnson Circuit Court.*—HON. C. W. SLOAN, Judge.

AFFIRMED.

*S. P. Sparks, L. B. Wheat* and *Harry Winston* for plaintiffs in error.

(1) On the death of William M. Macey, Charles and Joseph, his sons, each inherited half the land in controversy. Revised Statutes, 1845, p. 421, sec. 1. (2) Under the pleadings and all the evidence, plaintiffs and defendant claim under William M. Macey as a common source of title, and it was therefore unnecessary to go beyond him to show title in plaintiffs, and the only question in the case was whether plaintiffs or defendant had acquired the title of William M. Macey. *Smith v. Lindsey*, 89 Mo. 76; *Grandy v. Casey*, 93 Mo. 595; *Brown v. Brown*, 45 Mo. 412. (3) The court

erred in refusing plaintiff's seventh declaration of law. The probate court of Platte county had no jurisdiction to appoint John E. Pitt administrator *de bonis non* of the estate of William M. Macey, deceased, or to direct said estate to be put in his charge as public administrator, because James S. Thomas, the first appointed administrator, was not dead, had not resigned, and had not been removed. There cannot be two sets of administrators on the same estate at the same time. The first appointment exhausts the jurisdiction of the court, and the second appointment and all acts done by Pitt, the second appointee, were without jurisdiction and void *ab initio.* Freeman on Void Judicial Sales [1 Ed.], sec. 10; *State to use v. Green,* 65 Mo. 530; *Warren v. Carter,* 92 Mo. 288; Rorer on Judicial Sales [2 Ed.], secs. 452, 488; Woerner's American Law of Administrators [1 Ed.], sec. 247, note 4; *Post v. Caulk,* 3 Mo. 35; *Munroe v. People,* 102 Ill 406; *Haynes v. Meeks,* 20 Cal. 288, and cases cited. (4) This case stands on the evidence to the effect that Pitt did not take such oath as required by sections 12 and 13, Revised Statutes of Missouri, 1845, page 64, and therefore he was not authorized to act, and his pretended application and sale of the land in controversy is void, and any recognition of him as administrator by the Platte probate court does not avail defendant. *Pryor v. Downey,* 50 Cal. 388; *Matter of Estate of Hamilton,* 34 Cal. 464. (5) Further, Pitt was not administrator *de bonis non,* because not confirmed as required by sections 1 and 2, page 62, Revised Statutes, 1845, which read as follows: "And shall enter on the record the confirmation or rejection of such letters." (6) After the appointment and qualification of Paxton as public administrator, on June 2, 1857, the probate court had no jurisdiction to authorize Pitt as public administrator to sell the lands in controversy in 1858, while Paxton was such public administrator, and

the sale so made by Pitt was therefore null and void. And therefore the court erred in not giving the seventh declaration of law asked by plaintiffs, and in giving the declaration asked by defendant. (7) The Platte probate court on May 10, 1859, at the April term, A. D. 1859, by its order of record continued the matter of Pitt's report of sale to its July term, A. D., 1859 (page 289), and never made any order setting aside said order of continuance; notwithstanding which continuance, it made, on June 10, 1859, at the same April term, an order pretending to approve said report of sale without notice to or the appearance of any one interested in the estate. Therefore said approval of said report is void. (8) The proceedings in the probate court for the sale of the land by Pitt were *coram non judice* as to the interest of William M. Macey, deceased, in said land, and also as to the persons of the heirs and those interested in the estate of William M. Macey, deceased, because the order of sale and the notice of presentation of a petition therefor, and the petition for the order of sale of the land by Pitt, were all in the matter of the estate of W. M. Macey, deceased, and not in the matter of the estate of William M. Macey, deceased. *Skelton v. Sackett*, 91 Mo. 377. (9) Even if the notice and petition could have conferred jurisdiction over the title of William M. Macey, deceased, and over the persons of those interested therein, still such jurisdiction was lost, because the order of sale was not applied for on the day named in said notice, to-wit: the first Monday in July, 1858, though the court was in session on said Monday, July 5, 1858, as well as on July 6 and 7, 1858, and the order of sale was not applied for nor made until Thursday, July 8, 1858, when the record of the order itself shows no one appeared. Jurisdiction over the heirs was lost by this lapse of time. *Turney v. Turney*, 24 Ill. 625; *Gibson v. Roll*, 30 Ill. 172. (10) The sale

was void because it was not made on the day named in the order of July 8, 1858, confessedly; and there was not any valid alias or renewal order for the land to be sold on December 20, 1858.   (11)  Sale proceedings all void because record affirmatively shows that the order of sale was made without proof, or showing, or finding of the facts required by Revised Statutes, 1855, page 143, section 10, and page 146, section 26.   (12)  Pitt's pretended sale and the Paxton deeds are void on the whole record considering the lapse of time.   The lapse of nearly twelve years from the death of decedent and the original grant of administration before applying for the order of sale, was too long and unreasonable a delay, and therefore the pretended sale and Paxton deeds should be held absolutely void.  Rorer, Judicial Sales; Woerner's American Law of Administration; *Gunby v. Brown*, 86 Mo. 253; *McCoy v. Morrow*, 18 Ill. 524.   (13)  Pitt's pretended sale of the land in controversy was absolutely void because it was not made during the session of the proper court.  *McClurg v. Dollarhide*, 51 Mo. 347; Local Laws of Missouri, 1855, p. 93, sec. 7; Laws of 1857, p. 401, sec. 1; Revised Statutes of Missouri, 1855, p. 746, sec. 45; *Mobley v. Nave*, 67 Mo. 549; *Bank v. Evans*, 51 Mo. 341; *Wilcoxon v. Osborne*, 77 Mo. 632; *Gunby v. Brown*, 86 Mo. 257; *Lynde v. Williams*, 68 Mo. 360; *Mere v. Bell*, 45 Mo. 333.   (14)  There was no proof of payment of purchase money, or of change in the character of the possession from subordinate to adverse.

*C. O. Tichenor* for defendant in error.

(1)  Judgments of probate courts as to matters within their jurisdiction import the same verity as those of courts of general jurisdiction.  *Camden v. Plain*, 91 Mo., 131; *Frye v. Kimball*, 16 Mo. 21; *Price*

*v. Springfield, etc.*, 101 Mo. 116; *Agan v. Shannon*, 103 Mo. 668. (2) The validity of letters of administration cannot be collaterally attacked. *Wright v. Wallbaum*, 39 Ill. 554; *Riley's Adm'r. v. McCord*, 24 Mo. 266. *Wetzel v. Waters*, 18 Mo. 396; *Johnson v. Beasley*, 65 Mo. 250; *Brooks v. Duckworth*, 59 Mo. 49; *Gray's Adm'r. v. Cruse*, 36 Ala. 563. *Willis v. Ferguson*, 59 Texas, 504. (3) The acts of the probate court in *State v. Rucker*, were construed as a revocation of the letters, though there was no order of revocation. See also *Grayson v. Weddle*, 63 Mo. 535; *Vosler v. Brock*, 84 Mo. 574. (4) Letters issued in vacation are valid until they are rejected by the court. *Potter v. Adam's Ex'rs.* 24 Mo. 163. (5) Sales of land by probate courts are judicial ones. *Davis v. Gaines*, 104 U. S. 391. (6) In the absence of fraud no question can be entertained collaterally as to anything lying within the jurisdictional sphere of the original case; infinite confusion and mischief would ensue if the rule were otherwise. *Cornett v. Williams*, 20 Wall. 240; *Wolf v. Robinson*, 20 Mo. 460. (7) Claims may, under certain circumstances, be allowed more than two years after the date of the letters of administration. *Vosler v. Brock, supra*; *Wernse v. McPike*, 86 Mo. 572; *Tenny v. Lasley*, 80 Mo. 664; *Posthlewaite v. Ghiselin*, 97 Mo. 425. (8) Whether claims were properly allowed or not, to pay which land has been sold by the administrator, is a question which cannot be raised in a collateral attack upon the sale. *Grayson v. Weddle*, 63 Mo. 536; *Camden v. Plain*, 91 Mo. 120; *Vosler v. Brock, supra; Murphy v. De France*, 105 Mo. 72. (9) A presumption arises from the order that the land was subject to sale. *Murphy v. De France*, 105 Mo. 62. (10) The approval of the sale is in effect a judgment that the sale has been conducted according to law and the order of the court. *Hughes v. McDivitt*, 102 Mo. 82; *Sherwood v. Baker*, 105 Mo.

476. (11) The records show no seals to the administrator's deeds first executed. The law will presume that they were sealed. *McCoy v. Cassidy*, 96 Mo. 429. (12) It was not necessary for the order to state that the sale should take place during the session of the circuit, probate or county court. *Evans v. Robberson*, 92 Mo. 197; *Matney v. Graham*, 50 Mo. 562; *Jackson v. Magruder*, 51 Mo. 58. (13) If a deed was made by administrator before receiving the purchase money that would not make it void. *Wilkerson v. Allen*, 67 Mo. 509; *Gordon v. Gordon*, 55 N. H. 403; *Comstock v. Crawford*, 3 Wall 406.

BLACK, P. J.—This is an action of ejectment for some two hundred and twenty acres of land situate in Jackson county. The land was patented to Albert W. Mason in 1836 and 1838. He conveyed the same to William M. Macey by a deed dated the seventh of February, 1846. The record discloses a deed from Macey to Jacob Johnson, dated in March, 1846, but this deed was declared a satisfied mortgage by the proceedings hereafter mentioned. William M. Macey died a resident of Platte county in July, 1847, leaving a widow, Jane H. Macey, and two sons. Joseph P. Macey was a son by the first marriage and Charles S. a son by the last marriage. Charles died without issue, so that his interest passed to his mother and half brother. She married a Mr. Wilson. The statement as thus far made leaves the title to the land in the plaintiffs, Joseph P. Macey and Jane H. Wilson.

The defendant sets up title under a sale made by John E. Pitt, administrator of the estate of William M. Macey, at which sale Robert G. Smart became the purchaser of a part of the land and John Kelly became the purchaser of the residue. If this administrator's sale and the deeds made thereunder transferred the

title of the Macey estate, then the plaintiffs cannot recover, and the judgment should be affirmed. As the plaintiffs have assigned no less than sixty-three alleged errors, it is necessary to set out all of the substantial steps taken in the course of the administration of the Macey estate.

On the twenty-second of July, 1847, the clerk of the county court of Platte county granted letters of administration upon the estate of William M. Macey to James S. Thomas. The following entry appears under date of May 4, 1848: "Now at this day comes James S. Thomas, administrator of the estate of William M. Macey, deceased, and makes settlement of said estate *upon his resignation*, which is shown thus;" then follows a statement of the accounts, showing a balance in his hands of $20.27, and the record concludes with these words; "The court allows the administrator the sum of $20.27 for his services."

Thomas had nothing further to do with the estate, and in June, 1848, the court directed Jacob Swope, public administrator, to take charge of the Macey estate and complete the administration. On the twenty-second of April, 1850, Swope resigned his office, and the probate court of that county appointed John E. Pitt, public administrator, and he qualified by giving bond. The probate court then ordered the Macey estate into the hands of Pitt as public administrator. Pitt filed an inventory showing cash received from Swope to the amount of $633. Although Pitt took charge of the estate as public administrator, still in October, 1850, letters were granted to him as administrator *de bonis non* of the Macey estate, and he gave bond as such administrator in that particular estate. These letters were granted to Pitt by the judge in vacation. On the fourth of November, 1850, and in term time, the court made this order: "The bond of John E.

Pitt, administrator *de bonis non* of the estate of William M. Macey, deceased, taken in vacation, is approved by the court and ordered to be filed."

Pitt, as such administrator, pursuant to an order of the probate court made in 1853, commenced a suit in the Jackson county circuit court to have the deed from Macey to Jacob Johnson, dated eighteenth of March, 1846, and before mentioned, declared a mortgage and for leave to redeem. By amended pleadings, the widow and heirs of Macey were made parties plaintiff with him. Such proceedings were had in that case that the court, in April, 1857, adjudged the deed a satisfied mortgage. There was a further decree setting the deed aside and declaring the title to the land in the heirs of Macey, the same as if the deed had never been executed.

On the eighth of April, 1858, Pitt as administrator petitioned the probate court for an order to sell this land in Jackson county to pay debts of the deceased. The proceedings then had are entitled "In the matter of the estate of W. M. Macey, deceased." The usual order was made to show cause on or before first Monday in July, 1858. On the eight of July, 1858, the court made a finding to the effect that the notice to show cause had been duly given, and ordered the administrator to sell the land at the court house door in Jackson county during the session of the "probate court" of that county. By a renewed order of sale made on the fifth of October, 1858, the administrator was directed to sell on the third Monday of December, 1858, during the session of the "court of common pleas of Jackson county." On the tenth of June, 1859, the administrator filed his report of sale in the Platte county probate court, and the same was duly approved on that day. This report recites an order of sale of date the eighth of July, 1858, and an *alias* order of sale of date

the first of November, 1858, and shows that the land was sold on the twentieth of December, 1858, while the "probate and common pleas court of Jackson county" was in session; that part of the land was purchased by Robert G. Smart and the balance by John Kelly; that the land was sold for one-third cash, one-third in six and one-third in twelve months; that the purchasers made the cash payments and gave their notes with security for the deferred payments.

This report of the sale was, as has been said, approved on the tenth of June, 1859. In November, 1860, Pitt had his annual settlement continued until January, 1861. No further proceedings appear to have been taken until the fifth of August, 1867, when the court made the following order:

"In the matter of estate of Wm. M. Macey, deceased. Now at this day it is ordered by the court that John E. Pitt, former public administrator, having said estate in charge, pay over to William M. Paxton, public administrator, all money and assets and effects in his hands belonging to said estate. It is further ordered by the court that citation issue to John E. Pitt, administrator as aforesaid of the estate of Wm. M. Macey, deceased, to present his accounts as such administrator for settlement at the next October term of this court, and to show cause why an attachment should not be issued against him for not exhibiting his accounts at the term which he was required to settle."

On the eighth of October, 1867, an order was made continuing settlement until November; and on the fifth of November, 1867, the court made this order:

' "In the matter of the estate of William Macey, deceased. Now at this day, John E. Pitt having failed to present his accounts as administrator of said estate, and having further failed to do so when duly cited, it is ordered by the court that attachment issue against

said Pitt to show cause why he has not presented his said accounts for settlement."

On that day an attachment was issued, and the sheriff brought Pitt before the court. This attachment was dismissed by the court on the tenth of January, 1868, and on that day the court made the following order:

"In the matter of the estate of William M. Macey, deceased. Now comes John E. Pitt, former administrator herein, aud files his settlement of said decedent's estate. Whereupon comes William M. Paxton, administrator *de bonis non* of said estate, and files exceptions thereto, and the matter is continued and set for hearing on the first Monday in February next."

The settlement then filed is in these words:

"John E. Pitt, administrator of the estate of William M. Macey, deceased, now comes and makes the following settlement:

ADMINISTRATOR TO ESTATE. DR.

To amount due on last settlement...................$37.30

Administrator believes that he has paid other demands against said estate of which he is not now able to account, but believes he will be so if the time is given him, when he will ask the court to give him further credits."

The exceptions made to this settlement were to the effect that Pitt had not charged himself with the proceeds arising from the sale of this land in Jackson county. Orders were made continuing this settlement and the exceptions thereto on the seventh of February, 1868, and on the thirtieth of March, 1868, but it was never approved; on the seventh of May, 1868, Pitt filed a further settlement showing a balance in his hands of $1,228.80, which settlement the court approved.

It does not appear that Pitt had anything further to do with the estate.

In April, 1869, Paxton as public administrator relinquished his right to administer upon the Macey estate, and the estate was then ordered into the hands of Yocom, public administrator.

In May, 1868, and after Pitt had been ordered to turn over the assets to Paxton, the court, in a matter entitled "George W. Buchanan, administrator of the estate of John Kelly *v.* Wm. M. Paxton, administrator of the estate of Wm. M. Macey," made a finding to the effect that Kelly paid to Pitt the full purchase price of the land purchased and ordered Paxton to execute a deed to the heirs of Kelly. On the same day a like order was made at the instance of Peacock, administrator of the estate of Smart. Pursuant to these orders, Paxton, as administrator of the Macey estate, executed two deeds, one to the heirs of Smart and the other to the heirs of Kelly, both acknowledged before Norton B. Anderson, clerk of the Platte county probate court, on the eighteenth of May, 1868. It appears Paxton, as such administrator, executed another deed to the heirs of Smart in 1877, to correct some supposed mistake, and the Kelly deed was re-acknowledged in 1877 before a notary public.

1. The defendant, by his answer, admits possession but denies the other averments of the petition, and for a further defense sets up part of the proceedings had in the probate court of Platte county. Various objections are made to this special defense in the brief of the plaintiffs on the ground that the facts specially pleaded do not show title in the defendant or constitute an equitable defense. The facts thus pleaded were all admissible in evidence under the general denial, and this case will therefore be disposed of here on the petition and general issue, so that it will not be neces-

sary to further notice the objections made to the special defense.

2. During the progress of the trial, the defendant put in evidence a transcript of certain orders of the probate court in support of the deeds to the heirs of Smart and the heirs of Kelly; and in rebuttal the plaintiffs offered in evidence a full and complete transcript of all the proceedings had in that court as they remained at the time the transcript was certified; but the trial court excluded this full transcript. The full transcript will be treated as part of the record in this case, it having been preserved by the bill of exceptions. If it shows title out of the plaintiffs, then the judgment, which was for defendant, should not be reversed because of the ruling of the trial court excluding it.

3. It may be stated here at the outset of this case, that the law has confided probate matters, including the sale of real estate to pay debts of a deceased person, to the exclusive jurisdiction of the probate courts. The orders and judgments of these courts, concerning matters over which they have jurisdiction, are no more open to collateral attack than are the orders and judgments of other courts of general jurisdiction; and these orders and judgments of the probate courts must have accorded to them the same intendments and favorable presumptions that are accorded to the orders and judgments of our circuit courts. It follows that the orders and judgments of the probate courts, relating to matters within their jurisdiction, will be presumed to have been regularly made and entered until the contrary is made to appear. *Camden v. Plain*, 91 Mo. 118; *Rowden v. Brown*, 91 Mo. 429; *Price v. Real Estate Association*, 101 Mo. 107; *Murphy v. DeFrance*, 105 Mo. 53.

4. It is objected that the probate court of Platte county had no jurisdiction to appoint John E. Pitt administrator of the Macey estate, or to order that estate into his hands as public administrator, because the estate was then in the hands of James S. Thomas as administrator. While it does not appear that Thomas gave the eight weeks' notice of his intention to apply to the court for leave to resign his letters, as required by section 40, p. 69, Revised Statutes 1845, or that any express order was made permitting him to resign, still it does appear that on the fourth of May, 1848, he appeared before the court, and his accounts as administrator were stated upon the record. He then made a full settlement, and the record speaks of it as a settlement made "upon his resignation." If it affirmatively appeared that notice of an intention to resign had been given, there can be no doubt but this settlement would constitute a good and sufficient acceptance of the resignation; for informal as the entry is, it shows a settlement of accounts in view of a resignation then tendered. Thomas had nothing to do with the affairs of this estate after this settlement, and they at once passed into the hands of Swope, public administrator. The presumption from these circumstances is that Thomas gave due notice of his intention to resign. "Acts done which pre-suppose the existence of other acts to make them legally operative are presumptive proof of the latter." See authorities cited under third paragraph of this opinion; also *Jones v. Beazley*, 65 Mo. 250; 1 Greenleaf's Evidence, sec. 20. The conclusion therefore is that Thomas resigned his letters, and it follows that the court had the power to order the estate into the hands of Swope; and upon his resignation the estate was properly ordered into the hands of John E. Pitt, public administrator.

5. The estate was ordered into the hands of Pitt, public administrator, in April, 1850, and he then took charge of it as such public administrator and received from Swope the money and assets belonging thereto. Thereafter and in October, 1850, the judge of the probate court granted letters of administration to Pitt as administrator *de bonis non* of the Macey estate, and Pitt then gave bond as such private administrator. The next contention is that Pitt continued to have charge of the estate in his capacity of public administrator and not in the capacity of a private administrator *de bonis non*, because it does not appear that the probate court at its next term entered of record "the confirmation or rejection of such letters" granted in vacation as required by section 2, p. 62, Revised Statutes 1845.

An answer to this objection is that letters granted in vacation are not limited in point of time to the succeeding term. When issued in vacation they are valid until rejected by the court. *Potter v. Adams' Executors*, 24 Mo. 159-163. Another answer to the objection is that the court did, at its next term, make an order approving the bond given in vacation, and for a period of ten or more years Pitt managed the estate under numerous orders of the court as a private administrator *de bonis non*, and not as public administrator. These facts constitute a good and sufficient approval of the grant of letters in vacation.

The fact that it does not affirmatively appear that he made the affidavit required by section 13, p. 64, Revised Statutes, 1845, is immaterial. Letters were issued to him and they are evidence that the proper steps were taken to procure the appointment. Moreover, parties desiring to make such objections must do so in the probate court. It is not open to them to make them in a collateral suit.

6. But it is here further objected that as Pitt had charge of the estate in his capacity of public administrator, there was no vacancy, and, hence, the letters *de bonis non* issued to him as a private administrator of the same estate were utterly void. This objection is answered by section 10, ch. 4, Revised Statutes 1845. That section provides that if, at any time, letters "be regularly granted  *  *  *  to any other person," the public administrator shall, under the order of the court, deliver to the executor or administrator thus regularly appointed, the papers and assets of the estate in his hands. It is true this section uses the words "to any other person," but they cannot be so restricted in their meaning as to prevent a person acting as public administrator from taking out letters in the usual way. The plain meaning of the law is that whenever letters are granted to any one, the public administrator must turn over the money and property of the estate to the person to whom such letters have been granted; for as the law then stood the letters gave to the person to whom they were issued the superior right to proceed with the administration. Of course we are speaking of the statute as it stood at the date of the order in question. The conclusion, therefore, is that Pitt was the duly appointed and qualified administrator *de bonis non* of the estate of William M. Macey from and after October, 1850, and that he was such administrator under the authority of letters issued to him individually, and that he did not have charge of the estate from and after that date as public administrator.

7. The next objection is that the proceedings begun on the eighth of April, 1858, for a sale of the land in question to pay the debts of the deceased, are void, because the order to show cause and the notice

Vol. 116—32

given by publication pursuant thereto are entitled "In the matter of the estate of W. M. Macey, deceased, and not in the matter of the estate of William M. Macey. The notice to show cause need not be addressed to the persons interested by name.  It is sufficient to describe the estate, and then address the notice to "all persons interested in said estate."   We find this estate is, in this record, extending over a long period of time, described in various ways, sometimes as the estate of William M. Macey, again as the estate of Wm. M. Macey, and again as the estate of W. M. Macey.  The latter description is used in a proceeding to which the widow, one of the plaintiffs in this case, was a party plaintiff.  The estate appears to have been as well known by the one designation as the other, and it is difficult to see how any interested person could have been misled by the notice.  The objection is exceedingly technical and need not be further considered. The order to show cause and the notice given pursuant thereto are sufficient.

8.  The further contention is that this sale was and is void because of the delay in applying for the order of sale, and *Gunby v. Brown*, 86 Mo. 253, is cited in support of the objection.  The proceeding there was one to enjoin a sale, while the effort here is to have a sale actually made declared void in a collateral suit. There is therefore no analogy between the two cases. Again it was held and distinctly held in that case that the reasonable time allowed to an administrator or the creditors in which to procure an order of sale depends upon the circumstances of each particular case.  Here there was a delay of some eleven years and over from the date of the original grant of letters until the petition for the sale of this land was filed; but there were several changes in the administration.  The title to this land appeared to be in Jacob Johnson, and it was

proper to remove that cloud before applying for an order of sale. The pendency of that suit in the circuit court of Jackson county and in the circuit court of Clay county to which it had been transferred by change of venue, was of itself a sufficient cause for the delay. This objection would have been of no avail if made in the probate court, and for much stronger reasons it is not well taken in this collateral suit.

9. The contention that this sale is void because not necessary to pay debts of the deceased is not well taken for several reasons. In the first place it cannot be said from this record that the sale was unnecessary. And in the next place the objection is answered by the judgment of the probate court. That court had the jurisdiction and it was its duty to determine the question as to the necessity for a sale. In making the order of sale, it gave judgment that the circumstances existed rendering a sale necessary. Accordingly, the sale was made and thereafter duly approved by that court. By that approval, the matter passed into a final judgment, which cannot be reviewed in this suit. The remedy for any error in the order of sale or approval of the same was an appeal from the judgment of the probate court. That judgment is not open to review in this case. *Wolf v. Robinson*, 20 Mo. 460; *Grayson v. Weddle*, 63 Mo. 523-536. Also cases before cited. The case of *Fenix v. Fenix*, 80 Mo. 27 is not in conflict with what we have said, nor does it support the position taken by the plaintiffs in this case.

10. The report of sale sets out and recites an *alias* order of sale of date the first November, 1858, when in point of fact the *alias* or renewed order was made on the fifth October, 1858, and this is said to be a fatal error. The record shows that but two orders were made; the date of the first or original order is correctly stated in the report. As there were but two orders, it

is evident that the mistake in giving the date of the renewed order is a mere clerical error. The record itself corrects the mistake.

11. It is again insisted that the sale should have been made during a session of the Jackson county circuit court. According to the act amending the act creating the Platte county probate court (Acts of 1857, p. 410) administrators' sales are to be made under the order of that court, that is to say, according to the general law relating to such sales. This we think was the object and purpose of the amendatory act. The sale could therefore be made at any time during the session of the circuit, probate or county court of Jackson county, the county in which the land was situated. 1 Revised Statutes, 1855, p. 147, sec. 31.

The court in Jackson county having probate jurisdiction was called by the act creating it the "probate and common pleas court." When the renewed order of sale speaks of the "common pleas court" it has reference to the probate and common pleas court. This is quite evident, for there was no other court in Jackson county answering the description of common pleas court. That court, it is true, held certain terms for the transaction of common pleas business, and it held other and different terms for probate business, but it was nevertheless one and the same court. It was none the less a probate court, within the meaning of the statute providing where and when administrators' sales should be made, because it had common pleas business added to its probate jurisdiction. The sale was made on the exact day mentioned in the renewed order of sale; and it was also made while the probate and common pleas court was in session for the transaction of probate business. It was therefore made at the time and place and during the session of the court specified in the renewed order, and it was also

made during a session of the court specified in the law.

12. The remaining objections to be noticed deny the validity of the administrator's deeds. And here it is insisted, with a view of raising other objections, that all persons holding under the administrator's deeds are estopped from saying that Pitt did not act in the capacity of a public administrator. This alleged estoppel is based upon the fact that he is described as public administrator in the order of date the fifth of October, 1867, directing him to turn over the assets of the estate to Paxton, public administrator, and because he is described as public administrator in the two orders directing Paxton to execute deeds to the heirs of Smart and to the heirs of Kelly. We have seen that Pitt was, in point of fact, a private administrator *de bonis non* of the Macey estate from and after 1850, when letters were issued to him. The grant of letters is shown by the record, and it is difficult to see how the record making the appointment and defining his capacity can be overcome by a misrecital in subsequent proceedings. It must be manifest that it is the record making and showing the appointment, the letters themselves, that determine the capacity in which he acted. No mere misrecital in subsequent proceedings can make him a public administrator. Now the fact that he is designated and described as public administrator in these orders made in 1867 and 1868, when he was in fact a private administrator *de bonis non*, does not affect the validity of the acts done thereunder, or change the capacity in which he held the estate. Says Schouler: "We may add, that, in general, the validity of a personal representative's acts depends on whether they were within the scope of his authority as granted; not on whether he designated

himself by one title or another.    Schouler on Execu-
tors and Administrators [2 Ed.], sec. 415.

13. The more difficult question arises out of the
objection that the order of fifth of August, 1867,
directing Pitt to turn over the assets of the estate to
Paxton and the two orders directing Paxton to execute
the deeds are void.    This claim is put upon the ground
that Pitt had not resigned nor had his letters been
revoked; and that the court had no power to order the
estate into the hands of the public administrator while
Pitt's letters stood in full force and effect.

Conceding that there cannot be, in this state, two
sets of lawful administrators at the same time on the
same estate, still the appointment of an administrator
*de bonis non* is of itself, *prima facie* evidence of a
vacancy; and this presumption must prevail, in a
collateral proceeding like this, until it is clearly and
explicitly disproved. *Gray's Adm'rs v. Cruise*, 36
Ala. 559, and cases before cited.    The order directing
Pitt to turn over the property of the estate to Paxton
was in effect an order appointing a successor to Pitt,
and is entitled to the same presumption that would be
given to an order granting letters *de bonis non*; for, if
there was a vacancy, the court had the power to order
the estate into the hands of the public administrator.
The presumption, therefore, is that there was a vacancy.
To overcome this presumption, the plaintiffs put in
evidence a complete transcript of the proceedings had
in the probate court as they now remain in that court.
It does not affirmatively appear from this transcript
that Pitt ever resigned his letters.    According to the
statute in force at that time, an administrator could
resign by giving four weeks' notice by publication of
his intention to apply for leave to resign, and by pro-
curing an order allowing him to resign.    But it would
still be his duty to account to his successor in office.

In a collateral proceeding like this, it is not necessary to a valid resignation that there be an express order accepting it. *Gray's Adm'rs v. Cruise, supra; Willis v. Ferguson,* 59 Tex. 172. And we have before held in the present case that a resignation will be presumed from an approved settlement professing to be made "upon resignation," followed by a change of the affairs of the estate to a successor.

The complete transcript here shows that nothing was done in this estate in the probate court from November, 1860, to fifth of August, 1867, the date of the order requiring Pitt to turn over the assets to Paxton. Pitt being cited to appear and make settlement, and attached for failing so to do, he filed a settlement; and the record made at that date speaks of him as "former administrator" of the Macey estate. Paxton, as the then administrator, filed exceptions, and the settlement was not approved; but in May, 1868, Pitt filed a settlement, which was approved, and he had nothing further to do with the estate. In the meantime the probate proceedings are conducted in the name of Paxton. Such is the history disclosed by the record covering a period of eight years. These transactions occurred twenty years before the institution of this suit. It affirmatively appears that most of the papers filed in the matter of this estate in the probate court have been lost. Under these circumstances it must and should be presumed that Pitt had tendered his resignation, and having done so, the order directing him to turn the assets over to Paxton is a sufficient acceptance thereof by the court. This record, taken as a whole, does not overcome the presumption of vacancy arising from the order placing the estate in the hands of Paxton. The full transcript, as we have it, strengthens that presumption. Paxton was, therefore, the rightful administrator when he

executed the deeds; and he was the proper person to execute them, having been ordered so to do by the probate court. General Statutes, 1865, sec. 36, p. 499.

14. The deeds executed by Paxton, as administrator, pursuant to the orders of the probate court of Platte county, were acknowledged before Norton B. Anderson, clerk of that court; and the certificates are attested under the seal of the court on the eighteenth of May, 1868. The further objection is that Anderson was not the clerk. To prove this alleged fact, the plaintiffs put in evidence a transcript of all of the proceedings of the court from the seventh of May to the first of June, 1868. This entry appears under date May 15th: "In the matter of the resignation of Norton B. Anderson, clerk. Now at this day B. W. Gilbert is appointed clerk of this court, and duly qualifies as same." Nothing more appears bearing upon the question until the following entry under date, June 1st: "Court met pursuant to adjournment. Present: SAMUEL A. GILBERT, judge; B. W. Gilbert, clerk," etc.

The official character of Anderson is stated in the acknowledgments, attested by the seal of the court, and the certificates themselves furnish *prima facie* evidence that he was the clerk of that court. While the record entries before quoted show that he had resigned, still there is nothing to show when that resignation took effect. It does not appear that the new clerk entered upon his duties prior to June 1st, which was after the date of the acknowledgments. An acknowledgment before an officer *de facto* is good. *Hamilton v. Pitcher*, 53 Mo. 334. Again, as long as Anderson continued to perform the duties of clerk, his acts were valid, certainly so as to the public. As there is nothing to show that the new clerk entered upon the discharge

of his duties prior to the first of June, there is nothing to overcome the *prima facie* case made by the certificates of acknowledgment, and they stand unimpeached. As clerk of that court he had the power to take and certify the acknowledgments. General Statutes, 1865, sec. 9, p. 444.

15. The final objection to these deeds is that they are not sealed instruments. The defendant made due proof that the original deeds were not in his possesion or under his control, and then read in evidence certified copies from the office of the recorder of deeds. These copies do not show any seal or scroll by way of a seal; but in each case the administrator states that he executed the deed under his hand and seal. With this statement in the deeds, the presumption is that the originals were sealed. This exact question was fully considered in *McCoy v. Cassidy*, 96 Mo. 429.

16. It follows from what has been said, that these administrator's deeds are valid, and that they conveyed the title to the grantees therein. The plaintiffs, therefore, have no title, and it is not necessary to a disposition of this case to examine the various deeds from these grantees to the present defendant. The judgment is affirmed. All concur.