101    669
f 101    701

# STATE ex rel. ALONZO SCOTT, Respondent, v. J. J. GREER et al., Appellants.

### St. Louis Court of Appeals, April 28, 1903.

1. **Administrators, Public: BONDS: LIABILITY OF SURETIES.** Since there was no evidence to prove that a public administrator's defalcation occurred during his first term, but, on the other hand, there being evidence that it occurred later, therefore the annual settlements made during his second term, showing the balance sued for to be still in his hands, fixed the liability on his sureties for his second term.

2. ———: **LIABILITY ON BOND, NOT DISCHARGED: SURETIES.** A settlement of a ward's estate, made by the individual administrator of the public administrator, when he surrendered charge to the latter's successor in office, did not operate to discharge the sureties on the public administrator's bond from liability, but such liability continued until the balance shown in favor of the ward's estate was paid to a succeeding curator or to the ward himself.

3. ———: **ANNUAL SETTLEMENT, CORRECTION OF, WHEN.** An annual settlement of an estate, made by a public administrator, is subject to correction at any time while the administration is in progress.

4. ———: **CURATOR DISCHARGED, HOW AND WHEN.** A curator and the sureties on his bond can only be discharged by the curator paying over the money in his hands at his final settlement, to his ward or to his successor in office.

5. ———: **CURATORSHIP, HOW TERMINATED: REV. ST. 1899, SEC. 3529, APPLIED.** The coming of age of the ward terminates a curatorship as to all things except the settlement between the ward and the curator, provided for by Revised Statutes 1899, section 3529, and such details as are necessary to wind up the estate and settle with the ward.

6. ———: **A WARD REACHING SENIORITY MAY SUE: ESTATE.** After the ward's coming of age, he and not his curator is the proper party to sue on the bond of a prior deceased curator, to recover money belonging to the ward which came into the deceased curator's hands but was never turned over to his successor in office.

Appeal from Butler Circuit Court.—*Hon. James L. Fort,* Judge.

AFFIRMED.

*Phillips & Phillips* for appellants.

(1) Lane having taken charge of the estates of Scott and Gregory, under the bond he gave in 1888, that bond and not the bond he gave in 1892 is responsible for any defalcation on his part, if there be any, which we deny. State ex rel. v. Holman, 93 Mo. App. 611.    (2) It is well-settled law in this State that final judgments of probate courts, in matters within their jurisdiction, are as conclusive as those of courts of general jurisdiction.    Coverington v. Chamberlain, 156 Mo. 587; Cox v. Boyce, 152 Mo. 576; Rogers v. Johnson, 125 Mo. 202; Macey v. Starks, 116 Mo. 481; Sherwood v. Baker, 105 Mo. 472; Price v. Springfield, 101 Mo. 107; Rowden v. Brown, 91 Mo. 429; Camden v. Pain, 91 Mo. 117, and cases cited.    (3)   Dalton being the administrator of Thomas M. Lane from the necessity of the case had charge of the estate of Alonzo Scott, and when Dalton advertised and made final settlement of the Lane estate to Mast, and also a transfer settlement of the Scott estate to Mast, and was by the court discharged, then it follows as a legal consequence that the order of the approval of his transfer settlement to Mast, has the force and effect of a final judgment, and can only be attacked for fraud, and never in a collateral proceeding as is attempted here.    Cooper v. Duncan, 20 Mo. App. 355; Henry v. McKerlie, 78 Mo. 425; Johnson v. Beazley, 65 Mo. 250; Rowden v. Brown, 91 Mo. 429. (4)   A security once released, no action on the part of the creditor can revive the obligation, ex parte James, 59 Mo. 280; Bank v. Lilard, 55 Mo. App. 675; Wilcox v. Todd, 64 Mo. 388.    The shortage or defalcation, whatever it may be, lies at either the door of Dalton or Mast, or both.

*John G. Wear* for respondent.

GOODE, J.—This is an action on the bond of Thomas M. Lane as public administrator of Butler county, Missouri, by virtue of an election held November 8, 1892. Lane was first elected public administrator of said county in 1888 and gave bond on December 13, 1888, with W. F. Neal and others as sureties. While Lane was serving his first term, the estate of relator Alonzo Scott, then a minor, was ordered into his hands by the probate court of Butler county, and he was appointed ex officio curator of said estate. He remained in charge of it until his death, which occurred January 30, 1895, during his second term, and meanwhile had made several annual settlements. After Lane's death, James L. Dalton was appointed administrator of his individual estate, and qualified as such, and Aaron Mast was appointed and commissioned public administrator of Butler county to fill out Lane's unexpired term. On March 4, 1895, the probate court ordered Aaron Mast to take charge of the estate of Alonzo Scott and thereafter on May 9th, Dalton, as administrator of Lane's estate in charge of Scott's estate, made (as appellants' abstract says ) "a transfer settlement of assets" in his hands belonging to the estate of Alonzo Scott to Aaron Mast the new public administrator, which settlement showed a balance due the estate of $356.75, and Mast subsequently charged himself with that sum in his annual settlements. Dalton afterwards resigned as administrator of Lane's individual estate and turned that over likewise to Mast by order of the probate court. It was conclusively shown by the evidence of both Dalton and Mast that instead of Dalton delivering to Mast any assets in his hands as administrator of Lane's estate which belonged to the estate of Scott, the minor, Dalton found no such assets among Lane's effects. About all the assets Lane had when he died were several thousand dollars worth of promissory

notes payable to himself, and there was but little, if anything, in his hands belonging to the various estates in his charge as public administrator. Outside of a few worthless notes, whatever was in his hands belonging to those estates, he seems to have converted into notes payable to himself individually. Mast afterwards discovered he had made a mistake in debiting himself with the amount shown to be due Scott's estate by the "transfer settlement" (so-called) of Dalton; and as he stood charged with that amount ($356.75) and responsible to Scott for it, he filed a petition in the probate court June 30, 1898, asking to have his third annual settlement corrected, in which that erroneous charge still appeared; which petition was granted and the correction made by striking the item from the debit charges against Mast. It seems that about the same time Mast instituted some sort of a proceeding against the sureties on Lane's bond to recover the balance shown to be in Lane's hands but never turned over to him. This proceeding was subsequently dismissed. In 1899, Mast was removed from the office of public administrator of Butler county and Lemuel Mills was appointed in his place and took charge of Scott's estate, in which, so far as appears, there has been no final settlement by either Mast or Mills. When Scott attained his majority he instituted this action on the second bond given by Lane as public administrator to recover the money belonging to Scott which came into Lane's hands but was never turned over to either of his successors in the curatorship.

Three defenses are made:

First, that the action ought to be on Lane's first official bond because he took charge of Scott's estate during his first term of office.

Second, that the settlement made by Dalton, as administrator of Lane's estate in charge of Scott's, has the force and effect of a final judgment and exonerates Lane's estate and his sureties from liability; that there-

after the remedy of Scott was on the official bond of either Mast or Mills.

Third, that if an action will lie on Lane's bond it must be brought by the curator now in charge of Scott's estate, as there has been no final settlement of it.

1. As to the first defense, we state that there is no evidence to prove Lane's defalcation occurred during his first term, while there is evidence to prove it occurred later; for the annual settlements he made showed the balance sued for to be still in his hands during his second term. The result is that the sureties on his second bond are the parties liable. The question was decided in State ex rel. Rutledge v. Holman, 93 Mo. App. 611, and appellants admit that decision by the Kansas City Court of Appeals is in point but question its soundness. We think it is perfectly sound and supported by abundant authority, as may be seen by reading it.

2. Conceding for argument's sake that the settlement made by Dalton when he surrendered charge of Scott's estate to Mast as Lane's successor in office, has the force and effect of a final judgment, what was determined by the judgment? That when Lane died he had in his hands, or should have had, $356.75 belonging to the estate of Alonzo Scott. That judgment established instead of defeating the plaintiff's case. It is true Mast charged himself with that amount in his annual settlements under the impression that Dalton had actually delivered it to him in solvent assets. But Dalton himself swore he delivered no assets of the Scott estate to Mast, and the erroneous debit of the above stated amount in the latter's settlements was properly corrected by the probate court when the truth was discovered. No attempt is made to impeach Dalton's final settlement nor to weaken its binding efficacy as a judgment, but only to collect what it shows to be due. The respondent's position is that Lane's sureties

were not discharged from liability by the settlement, but continued liable until the balance shown in favor of the ward's estate was paid to a succeeding curator or to the ward himself; which is not asserted to have happened. This position scarcely needs support by argument or authority, but is supported by the decision in State ex rel. Hospes v. Branch, 112 Mo. 661. That action was on Branch's bond as curator of Alice Crookes, a minor. When she became of age Branch made final settlement as curator and qualified as trustee of his former ward, pursuant to a provision of her father's will. At the same time he acknowledged the receipt as trustee of the balance due on his settlement as curator and was discharged from the curatorship. But he had been guilty of defalcations while serving as curator and the action was by his successor as trustee to recover the amount of the defalcations. One defense interposed was that the final settlement was a judgment and exonerated him and the sureties on his curator's bond; that the loss must fall on his sureties as trustee. In its opinion, the Supreme Court distinguishes between Branch's final settlement and the entry of satisfaction of the amount thereby shown to be in his hands, holding that the settlement was conclusive as to all matters involved in it, but that the entry of satisfaction was open to explanation and could be rebutted by proving that Branch did not have on hand, when he settled, the assets of his ward's estate his settlement showed he should have, but had previously misappropriated them. That case is in no particular unlike this one so far as the point in hand is concerned. No entry of record was introduced to prove Mast acknowledged receipt and satisfaction from Dalton of the money of the Scott estate which should have been in Lane's hands when he died. But Mast charged himself with the amount in his annual settlements and did so by mistake, as is conceded. His erroneous debit was surely as open to correction and explanation as was

Branch's false entry of record; for an annual settlement is subject to correction at any time while the administration is in progress. Baker v. Runkle, 41 Mo. 391; North v. Priest, 81 Mo. 561; Myers v. Myers, 98 Mo. 262. It is plain, therefore, that Dalton's settlement, instead of standing in the way of respondent's remedy, aids it by establishing, prima facie at least, the amount for which Lane and his sureties are accountable. For a curator and his sureties to be discharged from responsibility it is as necessary for the former to pay over the money in his hands as it is to file a final settlement.

3. If Scott was still a minor, the action against Lane's sureties to recover for that deceased curator's defalcation would doubtless have to be maintained by the curator in charge; that is to say, by Mills, the last curator. But Scott became of age before this action was instituted, which event terminated the curatorship as to all things except a settlement between Scott and the incumbent curator, and such details as are necessary to enable the latter to wind up the estate and settle with his ward. R. S. 1899, sec. 3529; Woerner, Guardianship, sec. 109; Reeve, Domestic Relations, 311; In re Nicoll, 1 Johns. Chan. 25; Norton v. Strong, 1 Conn. 65; Jones v. Ward, 10 Yerg. (Tenn.) 160. If Lane had lived and continued as curator until Scott's majority, the latter could have sued on his bond for his defalcation, according to all the precedents in this State. State ex rel. v. Slevin, 93 Mo. 253; Cohan v. Atkins, 73 Mo. 163; State ex rel. v. Berger, 92 Mo. App. 631; State ex rel. v. Holman, supra. Lane's death and the accession of another curator gave the successor the right to sue in behalf of the ward while the minority continued. But the party damnified by the default was Scott, and after he attained his majority he had the right to maintain the action in his own behalf. It might have been necessary to substitute Scott as relator as soon as he was of age, if the action had been begun while he was a minor by Mills. Richard v. Railway, 15 Nev. 167;

Clement v. Ramsey, 4 S. W. (Ky.) 311; Martin v. Richards, 5 La. Ann. 598. The action was properly brought to the use of Scott, as he is now of age, and Mills has nothing further to do as curator except to make final settlement. A curatorship differs from an administration in that the latter continues in full force until a final settlement occurs, and meanwhile the executor or administrator represents the heirs and creditors of the decedent. Hence, an administrator *de bonis non* must maintain an action on the bond of his predecessor for assets of the estate which came into the hands of the predecessor and were converted by him.

The judgment is affirmed. *Bland, P. J.,* and *Reyburn, J.,* concur.