STATE OF MISSOURI at the relation and to the use of LOUIS KING, curator of the estate of HARRY LEE ALLEN, a Minor, Respondent, v. THE UNITED STATES FIDELITY AND GUARANTY COMPANY, Appellant.

Kansas City Court of Appeals, May 3, 1915.

**PUBLIC ADMINISTRATORS: Ex-officio Public Guardian: Official Bond: Private or Official Capacity: Records of Court.** Where an application to have a guardian appointed for a minor prayed that the public guardian be appointed, and the probate court acting upon said application appointed the Public Administrator designating him, however, merely as "Jake H. Fisher, guardian" and authorizing and approving his taking charge of the estate and receiving a large sum of money without requiring him to give bond, as a private guardian is required by law to do; and where, in a proceeding to sell the minor's real estate, the guardian swears the appraisers as public administrator, which he had no authority to do if his guardianship was private, and the probate court recognized and gave effect to such affidavit by approving the report of sale in which the affidavit appears, there is no room or support for the contention of the public guardian's surety that he was appointed in his private and not his official capacity.

Appeal from Saline Circuit Court.—*Hon. Samuel Davis*, Judge.

AFFIRMED.

188MA45

*Marshall & Henderson* and *A. F. Rector* for appellant.

*Harvey & Bellamy* for respondent.

TRIMBLE, J.—During the times hereinafter referred to, Jake H. Fisher was the duly elected, qualified, and acting public administrator and ex-officio public guardian in and for Saline county, Missouri. Appellant on the 5th of February, 1909, became surety on his official bond as such.

This is an action brought on said bond in behalf of Harry Lee Allen, a minor. Said Fisher had charge of his estate and died in June, 1913, after having converted the funds thereof to his own use.

The sole defense of the surety company is that Fisher was young Allen's guardian in his individual capacity and not in his official capacity as public guardian. A jury was waived and the cause was submitted to the court upon agreed statement of facts, documentary records from the probate court, and certain admissions agreed to. The court found that Fisher as public guardian and curator was ordered by the probate court of Saline county to take charge of the estate of Harry Lee Allen, a minor, and that he did so pursuant to said order, and filed an inventory in said estate and continued in charge of said estate as such public guardian and curator until his death; that he did not well and faithfully discharge the duties of his said office as public administrator and ex-officio public guardian and curator in that after he executed the surety bond in question, he converted to his own use the sum of $799.64 belonging to said ward, for which, with six per cent interest from June 11, 1913, making an aggregate sum of $845.87, the court rendered judgment.

Appellant's view is that because the probate court, in appointing Fisher, did not designate him as public

administrator and ex-officio public guardian, or, at least, did not name him as public guardian, therefore, he was appointed in his individual and not in his official capacity. This claim has also for its foundation the further fact that the record shows the court issued letters of guardianship to Fisher which appellant says were unnecessary to give him charge of the minor's estate as public guardian, a simple order to that effect being sufficient.

It is to be observed, however, that there is no statement or description in the probate records expressly or affirmatively conveying the idea that Fisher was appointed in his private and not in his public capacity. He is merely designated as "guardian" without saying whether he is a private or public guardian. And there is evidence in said records clearly showing that the application to said court for guardian for said minor, and upon which said Fisher was authorized to act and was directed to make an inventory of the minor's estate, prayed for Fisher's appointment in his public guardian capacity. There is further evidence in said records that, in performing his duties as guardian, said Fisher did so as public administrator and performed acts which would have had no legal force or effect had he been caring for the estate in his individual capacity, and which acts the probate court recognized and gave full force and effect to in supervising what was done in the estate. If these things are borne out by the record in this case, it would seem there would be no ground for disturbing the finding and judgment of the learned trial court.

Section 299, Revised Statutes 1909, makes the public administrator ex-officio public guardian in his county, and requires him to give the bond Fisher gave in this case, conditioned for the faithful discharge of all the duties of his office. Section 302 of said statutes makes it his duty to take into his charge and

custody "sixth, the persons of all minors under the age of fourteen years, whose parents are dead, and who have no legal guardian; seventh, the estates of all minors whose parents are dead, or, if living, refuse or neglect to qualify as curator, or . . . are, from any cause, incompetent to act as such curator, and who have no authority by law to take care of and manage their estate."

The probate court records show that John Lee, the minor's maternal grandfather, made a written application to the court wherein it was stated that said Harry Lee Allen was a minor aged six, residing in Saline county, Missouri, and the owner of property therein; that "he is the child of, John W. Allen, who is now deceased, and Dovie May Ballard, who is now ———" (presumably the word "remarried" is omitted here since the mother's name is given as Ballard instead of Allen). Said application also stated that minor had no curator to manage his estate; that the applicant was the minor's grandfather and made the application at the request of the minor's mother. The application closed by praying that Jake H. Fisher, public guardian, be appointed.

The same day this application was filed, the probate court made the following orders of record:

"In re Estate of Harry Lee Allen, a minor. Now comes John Lee, and petitions the court to appoint Jake H. Fisher, guardian of said minor, which petition is ordered filed."

"In re Estate of Harry Lee Allen, a minor. Now comes Jake H. Fisher, and letters of guardianship are issued to him, and he is ordered to make inventory of said ward's estate, which is ordered of record."

"In re Estate of Harry Lee Allen, a minor. Now comes Jake H. Fisher, guardian, and makes and files inventory of said estate, which is seen and approved by the court, and ordered to be filed and recorded."

No order was made directing the said Fisher to give bond as guardian or curator of Harry Lee Allen, nor was any order made fixing the amount of any such bond, nor did Fisher give any bond as guardian of said minor. Immediately upon the making of the above orders, Fisher filed an inventory, and thereafter filed a petition to sell a portion of the minor's real estate for the purpose of the preservation of the rest of his property and for reinvestment to better advantage. The prayer of this petition was granted and the portion of real estate prayed to be sold was ordered sold and this was, in due course of procedure, done and a deed was ordered. The guardian's first settlement showed a balance of moneys in his hands due said minor of $1313.69; and at regular and proper intervals thereafter he continued to make settlements with said court as such guardian.

In all these records and settlements there is no designation of the person making them other than "Jake H. Fisher, guardian" except that in the appraisement attached to the report of sale of the real estate, the appraisers affidavit is subscribed and sworn to before "Jake H. Fisher Public Administrator."

As this affidavit of the appraisers was a part of the report of sale, the probate court recognized and gave force and effect to it as a valid affidavit by approving the report and ordering the deed to be made. The making of this jurat was, on Fisher's part, a declaration that he was acting in that estate as public guardian, and the recognition of the jurat's validity by the probate court was, on its part, a recognition of the fact that he had said estate in his hands by virtue of his office as public administrator. Because Jake H. Fisher, as public administrator, had no power or authority to administer oaths in a proceeding had by him in his individual capacity. Section 303, Revised Statutes 1909, authorizing public administrators

to administer oaths gives him power to do so only in "*matters relating to or belonging to the exercise of his* office." If he had the estate in his charge as a private guardian he had no authority as public administrator to administer an oath in that proceeding since it was not a matter belonging to the exercise of his office.

It is admitted there was but one Jake H. Fisher in the county and he was public administrator. This fact, of course, can of itself have no weight in determining the matter of the capacity in which he acted, but inasmuch as the application to the court was that the public guardian be appointed and the orders of the court were made in response to the request contained in that application, and inasmuch as the court made no order requiring Fisher to give bond, but allowed him to take charge of the estate and sell land and become responsible for a large sum of money without requiring a bond, it is inconceivable that the court was appointing him in his private capacity. It cannot be presumed that the court would omit and neglect so important a feature as the requirement of a bond which the law imperatively demands in the appointment of a private guardian. And since the records and orders nowhere show a valid appointment as private guardian but do show valid and ample authority for his appointment and subsequent acts as public guardian; and since the records and orders nowhere show a valid appointment as private guardian but do show valid and ample authority for his appointment and subsequent acts as public guardian, we are of the opinion that the learned trial court was justified in finding that he was appointed and acted in his public and not his private capacity.

It must be borne in mind that there are no records contradicting this view of his capacity. The records describing him merely as "guardian" do not controvert the idea that his capacity was that of public

guardian. It will not do to say that because the pro-
bate judge signed letters of guardianship, when a mere
order to take charge was all that was necessary, there-
fore he was appointed as a private guardian. Such
letters, without a bond being given and approved as the
law required, would not constitute a valid appointment
of a mere private guardian. And while in the case of
the public guardian letters were perhaps unnecessary
yet they could do no harm and were, in effect, nothing
more than a mere certificate of Fisher's authority to
act, and the record of their issuance was in reality an
order for him to take charge of the estate. There was
nothing in the orders of the probate court nor in the
papers filed by Fisher to discredit or contradict the
idea that he was authorized and acting in his public
and official capacity. On the contrary, there were facts
therein to show that this was the very capacity in
which he was considered and in which he acted. The
case is wholly unlike that of Macey v. Stark, 116 Mo.
481, cited by appelant. That was a case wherein cer-
tain administrator's deeds made upon orders of sale
obtained by John E. Pitt as administrator *de bonis
non* of the estate of William M. Macey, deceased, were
attacked as void. The contention therein, which is
material here, seems to have been that as the probate
court in April, 1850, directed Pitt, as public adminis-
trator, to take charge of said estate and he did so, he
therefore continued in charge as public administrator
and hence his acts in obtaining an order for the sale
of the land, *as a private administrator de bonis non,*
were of no validity. This contention, that he con-
tinued as public administrator, was based upon the
fact that some of the probate court orders (made after
he had sold the land), directing him to turn over the
estate to a succeeding administrator and ordering the
succeeding administrator to execute the deeds upon
the proceedings theretofore obtained by Pitt, described
Pitt and referred to him as public administrator.

Therefore the plaintiffs in that case insisted that these orders showed he was public administrator and not a private administrator *de bonis non* and that the parties claiming under the deeds could not assert that he was a private administrator. But the Supreme Court said in effect (page 496) that although the probate court did order Pitt as public administrator to take over the estate from a former administrator in April, 1850, yet, in October, 1850, the probate judge appointed him a private administrator *de bonis non, and he then gave bond in that private capacity* which was *approved by the court* in term time in November, 1850. Hence, he Supreme Court says (page 501), this shows he was appointed a private administrator *de bonis non,* and no mere misrecital in subsequent proceedings could have the effect of changing his capacity from that of a private to a public administrator. This, however, is in no way similar to the records in the case at bar. Here we have no records saying affirmatively that Fisher was a private guardian. Consequently, the instances in which the record shows he was acting as a public guardian are not misrecitals nor are they contradicted by anything elsewhere in the records. The records which describe him simply as "guardian" are not in conflict with those showing him to be a public guardian.

Point is made that even if respondent be deemed entitled to recover, still recovery cannot be had for the amount for which judgment was rendered. It seems to have been overlooked that it was stipulated and agreed that "if plaintiff is entitled to recover in this action against the defendant, the amount of such recovery shall be seven hundred ninety-nine and 64-100 dollars ($799.64) with interest from June 11, 1913."

Besides, the evidence shows that Fisher carried forward into the settlements made during his last term of office and after the bond herein was given, all moneys that came into his hands, and prima facie,

the defalcation occurred during the time this bond was in effect and threw upon apellant the burden of showing that it or any portion thereof took place before that time. [State ex rel. v. Holman, 93 Mo. App. 611, l. c. 617; State ex rel. v. Greer, 101 Mo. App. 669.]

The judgment of the circuit court is affirmed. The other judges concur.